NORA DODSON WHITTON, EXECUTRIX, *vs.* EMMA CLARK ET AL.

Third Judicial District, New Haven, June Term, 1930.
WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued June 4th—decided July 31st, 1930.

*James E. Brinckerhoff,* for the appellant (plaintiff).

*Norris E. Pierson,* for the appellees (defendants).

MALTBIE, J. With reference to the first claim, the law is well settled that where an owner of land causes a map to be made of it upon which are delineated separate lots and streets and highways by which access may be had to them, and then sells the lots, referring in his conveyances to the map, the lot owners acquire the right to have the streets and highways thereafter kept open for use in connection with their lands. *Derby* v. *Alling,* 40 Conn. 410, 432; *Pierce* v. *Roberts,* 57 Conn. 31, 38, 17 Atl. 275; *Fisk* v. *Ley,* 76 Conn. 295, 300, 56 Atl. 559; *Street* v. *Leete,* 79 Conn. 352, 358, 65 Atl. 373. The courts are in decided conflict as to

the extent to which any lot owner can claim that the streets plotted upon the map must remain subject to be opened for use. Some courts hold that he has a right to require this as to all streets plotted on the map. 1 Elliott on Roads & Streets (4th Ed.) § 132. Others restrict his right to such streets or parts of streets as give him access to some other public way. *Reis* v. *New York*, 188 N. Y. 58, 73, 80 N. E. 573. In *Derby* v. *Alling, supra,* we say (p. 432): "Where the owner of village property makes and publishes a map of it, with streets distinctly delineated, and then sells lots bounded on these streets, he comes under obligation to his vendees to open the streets to the public; the precise extent of the obligation being dependent on the particular circumstances of the case." While thus we accept the principle that the right of a lot owner does not extend of necessity to all the streets in the tract delineated upon the map, we have not in that case or elsewhere attempted to fix the limits of his right. On the one hand, to restrict that right to such streets as will give him access to some other public way is to take too narrow a view, for it must fairly be assumed that he bought his lot in reliance upon the situation disclosed upon the map so far as it would be beneficial to him. On the other hand, to give to every lot owner in the tract the right to demand that every portion of a street delineated upon it shall be held subject to a future use for highway purposes, no matter how remote it may be from his premises, and how clear it may be that it will never be of any value to him, is to adopt a doctrine calculated to lay a dead hand upon the natural use, development and sale of property as the needs of a community may develop. This public policy forbids. If the doctrine in question be rested upon estoppel, as suggested in *Derby* v. *Alling, supra,* p. 435, there is no sound reason to extend it as regards any lot

owner to include streets which in any situation reasonably to be anticipated would not prove beneficial to him and from the deprivation of which he would suffer no injury. See *Bell* v. *Todd,* 51 Mich. 21, 28, 16 N. W. 304. Or, if it be rested upon an implied covenant, as is sometimes stated, there is no occasion to extend that covenant beyond a situation which could in reason have furnished an inducement to the purchase of the lot because of some benefit to accrue to it. In *Pearson* v. *Allen,* 151 Mass. 79, 81, 23 N. E. 731, the court, speaking by Holmes, J., states that the fact that the particular street did not lead to a highway and that the lot in question did not abut upon it would not in themselves be conclusive against a right to have it left open for use, but in that case the right was denied because no benefit could be shown which the court could recognize as having a value.

If we turn to the map before us we find that the street in question is bounded upon the railroad right of way upon the east, over which there is no crossing; that it terminates in a dead end, and furnishes no means of access to any other way; nor is there in the record any suggestion that when the map was made or now there is a likelihood of such a means of access being opened in the future. The only use which the lot owners of the tract would make of it would be to give access to the few lots abutting upon it, and if they went upon it for that purpose, that would be an incident of the use of those lots and not of their own occupancy of other lots in the tract. From the north line of Union Street, projected easterly to the railroad right of way, none of the defendants have any right to require this street to be left for future development as a highway. A different situation exists as to the land south of that line and forming a continuation of Union Street easterly to the rail-

road right of way, for one of the lots in the tract not owned by the plaintiff abuts upon it and the owner of that lot has an undoubted right to require that this portion of the street be kept open. *Rodgers* v. *Parker,* 75 Mass. (9 Gray) 445.

The contention of the defendants that the lands of the plaintiff are subject to their right to enforce against them the requirements contained in the stipulations we have quoted is rested upon the claim that J. M. B. Whitton adopted a general plan for the development of the tract in which was included the imposition of this burden upon the various lots into which it was divided, under circumstances making it enforceable between the lot owners. This doctrine we fully recognize in this State. *Baker* v. *Lunde,* 96 Conn. 530, 114 Atl. 673; *Gage* v. *Schavoir,* 100 Conn. 652, 662, 124 Atl. 535; *Mellitz* v. *Sunfield Co.,* 103 Conn. 177, 182, 129 Atl. 228; *Armstrong* v. *Leverone,* 105 Conn. 464, 471, 136 Atl. 71. It is one of equitable origin and the exact basis upon which it rests is not always clear. In the leading case of *De Gray* v. *Monmouth Beach Club House Co.,* 50 N. J. Eq. 329, 339, 24 Atl. 388, it is said: "The equity would seem to spring from the presumption that each purchaser has paid an enhanced price for his property, relying on the general plan, by which all the property is to be subjected to the restricted use, being carried out, and that while he is bound by and observes the covenant, it would be inequitable to him to allow any other owner of lands, subject to the same restriction, to violate it." However sufficient that explanation may be where restrictions are contained in a deed of an entire tract through which title to all lots must be traced, or arise out of representations made generally to purchasers of lots, or are stated upon a map of the tract referred to in the conveyances, it obviously fails where it rests simply upon the insertion

of uniform restrictions in the deeds of various owners of lots; for in such a case the earlier grantees at least could not be said to have bought in reliance upon the general plan of the grantor in the development of the tract. Here the test must be the intention of the owner in creating the restrictions upon any lot to make the benefit of them available not to himself but to the owners of the other lots in the tract. *Baker* v. *Lunde, supra,* p. 537; *Nottingham Patent Brick & Tile Co.* v. *Butler,* L. R. 15 Q. B. D. 261, 268, L. R. 16 Q. B. D. 778, 784; *Bacon* v. *Sandberg,* 179 Mass. 396, 398, 60 N. E. 936; *Peabody Heights Co.* v. *Willson,* 82 Md. 186, 199, 32 Atl. 286. Where the character of the restrictions is such that they would be beneficial to the various lot owners, and they are imposed upon all or substantially all of the lots, and the grantor, by plotting the entire tract for sale or otherwise, evinces an intent not to retain ownership of any part of it, the conclusion that the restrictions were intended for the mutual benefit of the lots is almost conclusively shown. *Nottingham Patent Brick & Tile Co.* v. *Butler,* L. R. 16 Q. B. D. 778, 785. Where, however, the grantor intends to reserve a part of the tract for his own use and the character of the restrictions is such as to be of benefit to him by reason of that fact or otherwise and there is a failure to incorporate the restrictions in the conveyances of a considerable number of the lots, the inference that there was an intent to confer upon each lot owner a right to enforce them against the others is weakened or may be negatived. *McNichol* v. *Townsend,* 73 N. J. Eq. 276, 279, 67 Atl. 938; *Davidson* v. *Dunham,* 144 N. Y. Supp. 489, 491. While the precise form in which the restriction is stated should not be too much emphasized, it may throw light upon the intention of the grantor where that is doubtful. *Hopkins* v. *Smith,* 162 Mass. 444, 38 N. E. 1132; *Sharp* v.

*Ropes*, 110 Mass. 381, 384. These considerations have if anything a stronger application as regards all but three of the lots owned by the plaintiff than they would in a controversy between lot owners who have acquired title under conveyances containing restrictions, because the plaintiff's lots, with the exception of the three, are not expressly burdened with the restrictions, and, if they are effective at all, it must be because equity would imply an obligation upon the grantor who created the restrictions, which now rests upon his successor the plaintiff, to refrain from so dealing with the land remaining his as to derogate from the value of the restrictions he has imposed upon his grantees. *Mackenzie* v. *Childers*, L. R. 43 Ch. Div. 265; Berry on Restrictions on Use of Real Property, § 332.

Previous to the filing of the map in 1871, Joseph M. B. Whitton had conveyed ten lots by deeds containing the stipulation in its first form. Within about a month thereafter he conveyed ten more lots, by three deeds, containing the stipulation in its second form. A year later he began to make conveyances without restrictions or conditions and within the next five years deeds in this form were made of five lots. by number and others—how many cannot be determined upon the record—by descriptions having no reference to the map. Disregarding the deeds to the church, executed considerably later, without conditions or restrictions comparable with those in the earlier deeds, it thus appears that of the fifty-four lots in the tract only twenty were conveyed subject to either of the stipulations. This falls far short of the putting into effect by the grantor of any general plan or scheme with reference to the lots in the tract. If we turn to the stipulation in its earlier form we find that the first clause in it, and the one which from its position may fairly be regarded

as expressing the thought uppermost in the mind of the grantor, was not stated in the usual terms of a prohibition against the erection upon the lots of buildings costing less than a certain sum but was an affirmative requirement that dwellings costing not less than the amount named must be erected upon the lots. The first deed fixes eighteen months within which this must be done, and while in the later deeds the number of months is left blank, the stipulation is otherwise the same. Such a requirement points strongly to a purpose on the part of the grantor to hasten the development of the tract and increase the salability of the lots by providing for the speedy erection of houses of a certain type. The change in the stipulation to the more usual form of restrictions forbidding the erection of houses costing less than the sum named came only after ten lots had been sold, all in the tract westerly of the railroad, and is susceptible of explanation upon the ground that the grantor felt that the primary purpose he had in mind had been sufficiently accomplished or was affecting adversely the sales of other lots. To these considerations must be added one of great weight arising out of the form of the stipulation in all of the deeds, which was not only expressed as a condition, but specifically gave the right to re-enter upon a breach to the "grantor or his legal representatives." In such a situation it is not reasonably possible to find that Joseph M. B. Whitton adopted any such general plan or scheme for the development of the tract as would create as among the various lot owners a right to enforce among themselves the provisions of the stipulation or to impose them upon lands now owned by the plaintiff which never were in terms subjected to them.

The very brief finding of the trial court contains a number of conclusions of law or ultimate conclusions from the subordinate facts before it which the plaintiff

seeks to have stricken out by a motion to correct. These conclusions have been sufficiently dealt with in the foregoing opinion. The other corrections sought in the finding are not material in the view we take of the case.

There is error and the case is remanded with direction to enter judgment for the plaintiff in accordance with this opinion.

In this opinion the other judges concurred.