**IVAN S. McINTOSH, Plaintiff**
**v.**
**VALDEMAR PRINCE, Defendant**

# Civil No. 102-71

# Municipal Court of the Virgin Islands

Div. of St. Croix

Frederiksted Jurisdiction

FRANK PADILLA, Frederiksted, St. Croix, V.I., *for defendant*

JOHN D. MERWIN, Frederiksted, St. Croix, V.I., *for plaintiff*

MICHAEL DEANGELO, Frederiksted, St. Croix, V.I., *on brief*

JOSEPH, *Judge*

## MEMORANDUM OPINION

Plaintiff, Ivan S. McIntosh, filed an action for assault, trespass and damages in the amount of $4,500 and injunctive relief against defendant, Valdemar Prince, on June 23, 1971. Defendant denied the charges in the complaint and counterclaimed for $10,000 damages. Trial was held on October 13, 1971, and an oral judgment was rendered by this court on the same date. Subsequently the defendant moved to vacate the oral judgment, which motion the court will treat as a motion for reconsideration.

## FINDINGS OF FACT

Plaintiff, Ivan S. McIntosh, was the owner of a tract of land designated as Plot No. 5 in Estate La Grange, St. Croix. The land was surveyed and subdivided into twelve smaller plots on January 19, 1967, as shown in Public Works Drawing No. 2218.

On or about February 7, 1969, plaintiff conveyed the first of smaller tracts, a 0.2844 acre plot designated No. 5-H, to Winston M. A. Williams by Deed of Gift. According to the deed the property was granted, "together with all and singular the privileges, hereditaments, improvements and appurtenances thereunto belonging or in any wise appertaining."

Subsequently Williams granted, also by Deed of Gift, Plot No. 5-H to defendant herein. The provisions of that deed pertinent to the description of the property and the rights associated therewith were substantially the same as those found in the deed from plaintiff to Williams.

5

The lot in question is located in the northeast corner of the larger tract. Its north front (approximately 137 feet) abuts a public dirt road. Plot No. 5-I forms the southern boundary (also approximately 137 feet) of defendant's lot, while the eastern boundary (91 feet) is fixed by an adjacent tract of land (Plot No. 6) not involved in the subdivision. The western boundary was delineated at the time of the original conveyance from plaintiff to Williams by a fence which ran the length of the property line (91 feet). Parallel to the fence on the other side was a 30 foot wide strip of land, also fronting the public dirt road, and extending into the middle of the large tract (Plot No. 5) in the U-shape configuration in such a manner as to border at least part of all the subdivided plots. This proposed road plot was obviously intended by its design to serve as a right of way by necessity for certain inner lots when sold since no other access was available.

Plaintiff concedes that this U-shaped tract of land, designated Plot No. 5-L, was intended eventually to be a right of way. However, plaintiff argues that this way has never been opened and where this way was to join the public dirt road McIntosh had erected a fence across the way which connected to the fence marking Plot No. 5-H's western boundary.

The fence lines were constructed prior to plaintiff's first conveyance of Plot No. 5-H to Williams. The fence bordering this plot was admittedly knocked down by defendant after he became the owner of the plot. Defendant Prince also admitted driving and parking his vehicles on plaintiff's proposed road plot. McIntosh claims that the destruction of the fence caused him to lose five goats at the value of $100.00.

Both parties claim that the other has used threatening and abusive language in this matter. Prince contends in

his counterclaim that plaintiff's language and threats of violence caused defendant's tenant to vacate the premises.

At trial this court concluded from the evidence presented that no legal issue capable of resolution was raised by the mutual accusation that threats and abusive language had been used. Nor did we find the question of defendant's tenant's departure from the premises relevant to the real issue in this case—whether or not defendant had a right to cut or destroy the fence marking the western perimeter of his property in order to rightfully utilize the adjacent unopened road plot.

## CONCLUSIONS OF LAW

Defendant contends that he has an easement by implication to the use of the road plot since, by law, such easements are created when a plot of a subdivision is conveyed by a deed that refers to a map or plan in which a right of way is shown. Prince also claims that the fence on a boundary line of a plot is appurtenant to the property and will pass as part of the realty if the plot is conveyed. Implicit but unstated in defendant's argument is the assumption that a new owner would then have the right to tear such a fence down, particularly if it blocked access to a right of way. Plaintiff argues that under applicable Virgin Islands' law an unregistered right of way, in order to be recognized, must be the only or principal means of access to the property in question. Since the northern border of defendant's plot fronts on a public road, the unopened road cannot be considered a right of way by necessity as far as Prince's plot and appurtenant rights are concerned.

As a general rule owners of parcels into which the dominant tenement has been divided have the right to use right of ways created within the subdivision. 8 ALR 1368. Although implied easements are not favored by the

7

law, it is also a general rule that an easement is created in favor of a grantee whenever real property is sold and conveyed with reference to a plot or map on which streets or alleys are shown. 25 Am. Jur. 2d "Easements" Sec. 26. These general propositions are noted by defendant, who claims they are embodied in an applicable and controlling Third Circuit Opinion, Smith v. DeFreitas, 4 V.I. 525, 329 F.2d 629, which holds, according to defendant, that a grantor is estopped from repudiating or denying the existence of such an easement.

This court finds that although Smith v. DeFreitas involved similar questions of right of way, its findings were limited to the particular circumstances of that case—a fact situation involving the existence of a right of way by necessity (not at issue in the instant case) and an interpretation and extension of Danish Law which "included the concept that an unregistered right of way, in order to be recognized, must also be the only or principal means of access to the property in question." 4 V.I. at 532. The right of way at issue in the instant case is not the only or principal means of access to defendant's property.

There is considerable confusion and uncertainty among and within State jurisdictions as to the nature and extent of the easement accruing to a grantee. Out of the conflict, three views have emerged. Under the first, the "unity" rule, a grantee acquires a private right to the use of all streets and alleys delineated on a map or plot. Jurisdictions following the "beneficial" rule allow a grantee a private right to use all streets or alleys shown on the map or plot which are reasonably or materially beneficial to him and which would reduce the value of his lot if he was deprived of them. 25 Am. Jur. 2d Sec. 26.

Plaintiff suggests that Smith v. DeFreitas, supra, made the third view, known as the "necessary" rule, applicable in the Virgin Islands. Under this view, according to plain-

8

tiff, the private right of a user accruing to the grantee in the streets and alleys delineated in the map or plot is limited to such street or streets as are necessary to give him access to a public highway. Since the proposed right of way is not a necessary access for defendant in the instant case, plaintiff should prevail under the latter's interpretation of the law.

■ After reviewing the applicable law and circumstances, the court concludes that defendant does not have an easement by implication to his property. We are not, however, persuaded by plaintiff's reasoning. Even under the most restrictive interpretations of a grantee's rights under the "necessary" rule, it is often conceded that the portion of a right of way contiguous to or abutting a grantee's land is acquired as an easement by the purchaser regardless of the question of access to a public highway. 7 A.L.R.2d 640; Hawley v. Baltimore (1370) 33 Md. 270; 25 Am. Jur. 2d "Easements" Sec. 26.

We do not think justice is served in the instant case by choosing and then imposing one of the three rules or a variation thereof. We think the proper course of analysis was stated by the New York Court of Appeals in Erit Realty Corp. v. Sea Gate Assoc., 259 N.Y. 466, 182 N.E. 85 (1932). In referring to a lot owner's right to have an easement in an appurtenant right of way (beyond the question of necessity of access), the Court stated "that such an easement, if existing, arose solely by implication, and that question was one of intention, to be answered, like questions of intention generally, in the light of all the circumstances." Even in cases which conclude that a grantor is estopped, as against a grantee, to deny an easement by implication, it is often said that the principal factor in determining whether a conveyance of land which is bounded on an unopened street gave an easement to the grantee is the intention of the parties at the time of

9

the conveyance, and that no such easement would be created where the circumstances were such as to negate the idea that such an easement was intended by the particular conveyance. See 46 A.L.R.2d 461, 463; Freightways Terminal Co. v. Industrial & Commercial Constr., Inc. (Alaska) 381 P.2d 977 (jurisdiction following the "beneficial" rule); Whitton v. Clark, 112 Conn. 28, 151 A. 305 (1930) (holding that the precise extent of the obligation of the grantor was dependent on the particular circumstances of the case).

■ Where an unopened right of way is neither necessary nor beneficial for the enjoyment of the dominant tenement such an easement should not be presumed contrary to evidence of intention, particularly where, under the existing circumstances, it would operate as an onerous servitude upon the land of the grantor. See 7 A.L.R. 607, 640; Regan v. Boston Gas Light Co. (1884) 137 Mass. 37.

■ It is also a general rule that whether or not a grantor of land may erect and maintain fences preventing access to a right of way depends upon the intention of the parties connected with the original creation of the easement, as shown by the circumstances of the case, the nature and situation of the property subject to the easement, and the manner in which the way has been used or occupied. Burns v. McDaniel (Tex. Civ. App.) 158 S.W.2d 826.

■ Implicit from the factual circumstances before us was the apparent intention of plaintiff and Williams, the original grantee, to maintain the fence between grantee's property and the proposed right of way, with the additional understanding that plaintiff would continue to pasture his goats on the land adjacent to Plot No. 5-H.

It is clear in this case that neither plaintiff nor Mr. Williams considered that the latter had an easement over the

10

adjacent portion of the proposed road plot to the extent urged by defendant, or that Williams could unilaterally exercise this servitude by cutting down the fence and occupying the tract in question with his vehicles—the action taken by Prince, the subsequent grantee.

 The fact that Prince is a subsequent grantee does not, in our view, justify his conduct or change the character of the easement as originally understood. No use may be made of a right of way, different from that established at the time of its creation, so as to burden the servient estate to a greater extent than was contemplated at the time of the grant. Wall v. Rudolph, 198 Cal. App. 2d 684, 18 Cal. Rptr. 123; 25 Am. Jur. 2d "Easements" Sec. 77; 3 A.L.R.3d 1242. Until such time as plaintiff himself opens the road plot or sells any additional lots for which the right of way is either a necessity or necessary for the beneficial enjoyment of the conveyed land, defendant's vehicles parked on or using the road plot will be considered a trespass with attendant liability for damages to the fence and to the land.

For defendant's previous destruction of the fence line causing the loss of five goats belonging to plaintiff, we find damages in the amount of $101.00 ($100.00 for the loss of the goats, and $1.00 for the damage to the fence).