MARION ROAD ASSOCIATION ET AL. *v.*
ALBERT L. HARLOW ET AL.
(2381)

TESTO, DUPONT and BORDEN, Js.

Argued November 29, 1983—decision released March 6, 1984

*Frederic S. Ury,* for the appellants (plaintiffs).

*W. Bradley Morehouse,* with whom was *Albert L. Harlow,* for the appellees (defendants).

BORDEN, J. This is a suit by the owners of certain property in a real estate development seeking to enjoin the defendants, who are the owners of two lots in the same development, from using their lots for other than residential purposes. The basis of the plaintiffs' claim is that the defendants are about to erect an office building on their lots in violation of prior restrictions placed on the property. The trial court, in an exhaustive, factually complete and well reasoned memorandum of decision, found that no such restrictions existed, and rendered judgment for the defendants. The plaintiffs appealed.[1] We find no error.

In 1927 one Hill conveyed to Marion Levy sixteen acres of land in Westport (the Hill parcel). This deed contained no restrictions. In January, 1928, John Marvin, now deceased, conveyed to Levy 9.09 acres (the Marvin parcel) which abutted the Hill parcel and also abutted 10.7 acres of land retained by Marvin (the retained parcel) on which he maintained his home.[2] The deed from Marvin to Levy contained the following restriction: "This property is hereby conveyed subject to the following conditions and restrictions: That no building shall be erected on said premises to be used for any business or commercial purposes." In January, 1928, Levy recorded a map, entitled "Map of Restricted Home Sites, Offered by Marion S. Levy in Westport, Connecticut," which incorporated the Hill and Marvin parcels and which subdivided the property into forty-two numbered lots and an unnumbered three acre parcel. From 1928 through 1968 Levy conveyed forty of the lots; two more were conveyed by her executors in 1976. Of the forty-two lots conveyed, including the first one conveyed in 1928, eighteen were conveyed

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

[2] The appendix to this opinion delineates the three parcels, as well as the defendants' lots.

without any restrictions; six were conveyed with language indicating restrictions of record; two, conveyed by Levy's executors, were conveyed with language indicating restrictions of record, if any; two referred to the restrictions in the deed of the Marvin parcel; and fourteen were conveyed with restrictions to residential use more detailed than that contained in the deed of the Marvin parcel. Of these fourteen conveyances, eight contained language to the effect that the restrictions imposed were not binding on Levy as to her remaining lots. On October 4, 1977, Marvin's successor in title to the retained parcel released by quitclaim deed lots 1 and 2, which are owned by the defendants, from the restriction imposed by the 1928 deed to the Marvin parcel.

The defendants have filed with the Westport planning and zoning commission a site plan for an office building and parking lot for lots 1 and 2. The individual plaintiffs are the owners of lots 3, 9, 10 and 11; the named corporate plaintiff is a nonstock corporation which owns the roadways in the development. The plaintiffs claimed in the trial court that the defendants' lots are restricted to residential use. The trial court concluded that the 1977 release of the restrictions on the defendants' lot was valid and that Levy had not created a general scheme of restrictions for residential development applicable to all forty-two lots. The plaintiffs claim on appeal that the court erred in concluding that the defendants' lots were not burdened with residential restrictions, and in a ruling on evidence.

I

We first consider our scope of review of the trial court's conclusions. The defendants argue that because the questions involved here turn on the respective intentions of the grantors, Marvin and Levy, because intent

is a question of fact and because the trial court's conclusions are based on the resolution of those questions of fact, our review is limited to determining whether those conclusions are clearly erroneous under Practice Book § 3060D. The plaintiffs concede that the questions of intent are factual but do not address the issue of our scope of review. We conclude that our scope of review is not limited by the "clearly erroneous" standard of Practice Book § 3060D and that, in a case such as this, the issue of intent, although ultimately factual in nature, presents a question of law.

The trial court's conclusions as to intent were based, not on such factors as the credibility of witnesses, or on the testimony of live witnesses as to the meaning of documents or as to circumstances surrounding the execution of those documents, but on the intent expressed in the deeds considered in the light of their surrounding circumstances. We are guided by the principles articulated by the Supreme Court in a closely related context: " 'The meaning and effect of the reservation are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances . . . *and its interpretation presented a question of law.*' " (Emphasis added.) *Kelly* v. *Ivler,* 187 Conn. 31, 39, 450 A.2d 817 (1982). Indeed, a brief examination of similar cases involving construction of deeds, not based on the credibility of witnesses, indicates that the reviewing court does not give the customary deference to the trial court's factual inferences and decides the question of intent as a matter of law. See, e.g., *Kelly* v. *Ivler,* supra; *Peckheiser* v. *Tarone,* 186 Conn. 53, 438 A.2d 1192 (1982); *Taylor* v. *Dennehy,* 136 Conn. 398, 71 A.2d 596 (1950); cf. *Leabo* v. *Leninski,* 182 Conn. 611, 615–16, 438 A.2d 1153 (1981).

## II

The plaintiffs first argue that the trial court erred in failing to find that Levy established a general scheme of residential development. We disagree.

"[U]nder a general development scheme, where the owner divides the land into building lots to be sold by deeds containing substantially uniform restrictions, any grantee may enforce the restrictions against any other grantee." *Pulver* v. *Mascolo,* 155 Conn. 644, 650, 237 A.2d 97 (1967); *Hooker* v. *Alexander,* 129 Conn. 433, 436, 29 A.2d 308 (1942). Whether the property owner intended to create a general development scheme affording to the owners of all subsequent lots the right to enforce the restrictions is a question of fact, to be determined by reference to the language used and all the surrounding circumstances. *Pulver* v. *Mascolo,* supra, 652–53. The intent to create such a scheme is almost conclusively shown where the restrictions would benefit the lot owners, where they are imposed on all or substantially all of the lots, and where the owner, by plotting the tract for sale, indicates an intent not to retain ownership of any part of it. *Whitton* v. *Clark,* 112 Conn. 28, 36, 151 A. 305 (1930). That intent is negated, however, where the grantor intends to reserve part of the tract for his own use, where the restrictions benefit him thereby, and where he does not incorporate the restrictions in the deeds of a considerable number of lots. Id. Underlying this search for intent, moreover, is the rule that, since restrictive covenants are in derogation of the right to use land for lawful purposes, ambiguous language will be construed against the finding of such covenants which will not be extended by implication. *Hooker* v. *Alexander,* supra.

We agree with the trial court's conclusion that Levy did not intend to create a general scheme of residential development. The following facts point strongly in

that direction. The deed to the very first lot she conveyed, in 1928, contained no restrictions. This strongly indicates a lack of intent to create a general scheme of development. Eighteen of the forty-two lots conveyed were unrestricted. Thus, the restrictions were not imposed on all or substantially all of the lots; a considerable number of the lots were conveyed unrestricted. See *Whitton* v. *Clark,* supra. Of the deeds to the fourteen lots conveyed with detailed residential restrictions, eight contained language absolving her remaining lots from any such restrictions. Thus, Levy manifested an intent to reserve part of the tract to her own use, unrestricted. Construing the restrictions which Levy did impose against extension by implication, as we must; *Hooker* v. *Alexander,* supra; we believe that these indicia of intent not to burden the entire tract outweigh those other indicia, including the title of the map she filed; see *Hickson* v. *Noroton Manor, Inc.,* 118 Conn. 180, 188, 171 A. 31 (1934); which point in the opposite direction.

The case of *Rieger* v. *Wessel,* 319 S.W.2d 855 (Ky. 1958), relied on heavily by the plaintiffs, is distinguishable. There, unlike here, the subdivider included in all twenty-four of his deeds reference to the restrictions.

The plaintiffs also argue that the trial court erred in excluding from evidence a 1927 newspaper article which they claim showed that Levy intended to impose a general scheme of residential development. We note that the article did not purport to quote Levy. Under these circumstances the trial court was not in error in excluding it. *Hartford* v. *Maslen,* 76 Conn. 599, 615–16, 57 A. 740 (1904); see also *Cherniske* v. *Jajer,* 171 Conn. 372, 376–77, 370 A.2d 981 (1976).

### III

The plaintiffs also argue that the trial court erred in not imposing on the defendants' lots the restrictions

against business and commercial buildings imposed on the Marvin parcel by the January, 1928, deed to Levy. We disagree.

Where the owner of two adjacent parcels conveys one with a restrictive covenant and retains the other, whether the grantor's successor in title can enforce, or release, the covenant depends on "whether [the covenant] was made for the benefit of the land retained by the grantor in the deed containing the covenant, and the answer to that question is to be sought in the intention of the parties to the covenant as expressed therein, read in the light of the circumstances attending the transaction and the object of the grant." *Bauby* v. *Krasow,* 107 Conn. 109, 112–13, 139 A. 508 (1927). If the covenant is for the benefit of the retained land it runs with the land and may be enforced by the successor in title to the retained land against the successor in title to the conveyed land, on the principle which prevents one with notice of the just rights of others from defeating those rights. *Stamford* v. *Vuono,* 108 Conn. 359, 365, 143 A. 245 (1928).

We agree with the trial court that Marvin intended that restriction to benefit the retained land. His home, which was on the retained land, benefited by the continuation of the residential character of the abutting parcel. We see nothing in either the language of the deed or the surrounding circumstances indicating an intent on his part to burden the Marvin parcel apart from the benefit flowing therefrom to the retained parcel. Thus, these facts bring this conveyance within that class of cases in which the restrictions "will generally be construed to have been intended for the benefit of the [retained] land, since in most cases it could obviously have no other purpose, the benefit to the grantor being usually a benefit to him as owner of the land, and . . . if the adjoining land retained by the grantor is manifestly benefited by the restriction, it will be pre-

sumed that it was so intended." *Bauby* v. *Krasow,* supra, 114. Under these circumstances the quitclaim release by Marvin's successor in title relieved the defendants' lots from the Marvin restriction.

There is no error.

In this opinion the other judges concurred.

## Appendix