[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Gordon B. Mannweiler is a homeowner in an area of Naugatuck, Connecticut, known as Hop Brook Development. He and other owners of real property in this development bring this action to prevent the subdivision of certain property in the development owned by the defendant Robert S. LaFlamme. The plaintiffs allege that all of the lots in the development including those of the plaintiff and the defendant were the subject of mutual and substantially uniform restrictive covenants which prevent any owner from subdividing existing lots and which permit any owner to enforce the restriction against any other. The plaintiffs further contend that to the extent the deeds to defendants purport to allow the subdivision of the property into lots of a certain minimum size, those provisions in the defendant's deeds violate the general plan of the common grantor and are thus void and subject to injunction by the court.
The defendant admits intending to subdivide a large parcel of real property he owns in the development so that, instead of one building lot, three will exist upon which he intends to construct on each a single-family dwelling that comports with certain size, frontage, and first cost restrictions contained in the deed to his property. The defendant denies that the restrictions in any of the deeds to lots at Hop Brook Development either apply to his lot(s) or are enforceable against him, and he further asserts that even were the contrary true, the Marketable Record Title Act, Conn. Gen. Stat. Sec. 47-33 et seq., bars he plaintiffs' claims.
The parties each presented a number of witnesses, including experts in the subject of land titles and conveyancing; and each side presented dozens of documents in support of the argument each advances. The evidence took five days, and both sides submitted, at the court's request, proposed findings of fact and memoranda of law. From the evidence, the court finds the following:
The original owner of the entire area, "the common grantor", was the J. H. Whittemore Company. In the days before modern zoning regulation, it was customary for those who desired to create an area of land restricted to a single or exclusive use to CT Page 10431 do so by utilizing mutual restrictive covenants in the deeds to the area developed. The Hop Brook Development in Naugatuck was developed as an exclusively residential neighborhood of large, costly, single-family homes, and it remains so today.
In August of 1927, the Whittemore Company recorded a map of the proposed development, outlining streets and plots of land, on the Naugatuck Land Records. The map bore no other writing or legends relevant to this matter. The first sale of real property thereafter was in September of 1927 by a deed to H. H. Bristol, a predecessor in title to the plaintiff Gordon Mannweiler, conveying title to two lots upon which the deed imposes the restriction of constructing "one private residence for the use of one family only which . . . shall cost . . . not less than $15,000. . .". The language in this deed upon which the plaintiff relies in seeking to prevent the defendant from subdividing is this:
 3. Each and all of the foregoing covenants and restrictions are for the mutual benefit of all persons who have derived or who shall derive title, directly or indirectly, from the Grantor to any lot or lots shown on the map hereinbefore referred to, and shall run with the land in favor of all lots shown on said Map, and any breach or threatened breach of any one or more of all of the covenants and restrictions aforesaid may be enjoined upon application of the Grantor, its successors and assigns, or any person or persons who have derived or shall derive title, directly or indirectly, from the Grantor to any lot or lots shown on said Map.
From 1927, beginning with the first sale to the plaintiff's predecessor in title, until the conveyance of the first of the lots to the defendant's predecessor in title in 1937, the Grantor J. H. Whittemore Company deeded approximately thirty of the fifty-two lots, and each of these deeds contained virtually identical language as that above.[1] Then, in 1937, the Whittemore Company conveyed a lot to Lewis A. Dibble, a predecessor in title to the defendant, which, in addition to the above language, contained the following provision: CT Page 10432
 It is particularly agreed and understood that should the Grantee, his heirs or assigns, purchase further lands from the Grantor, or its successors, within block "E" as shown on said Map, the foregoing covenants and restrictions may be revoked, in whole or in part and others substituted therefor, by an agreement entered into by and between the Grantor, or its successors, and the Grantee, or his heirs or assigns, alone and without the consent of any other person or persons.
Thereafter the defendant's predecessors in title did purchase "further lands from the Grantor . . . in block `E'" adjoining the lot already conveyed. In these deeds to the adjoining property, the Whittemore Company inserted this language:
 In accordance with and to the extent that power to do [so] has heretofore been reserved by the Grantor, all covenants and restrictions applicable to the lands within said Section E heretofore purchased by the Grantee are hereby revoked.
The deeds then substantially restate the restriction regarding residential use of each dwelling by one family only, and adds the following:
 2. Said premises may be re-subdivided into building lots of dimensions other than those shown on said Map, provided, however, that no lot shall have a street frontage of less than 100 feet nor a total area of less than 15,000 square feet.
Of the fifty-two lots in the subdivision, the language expressly permitting subdivision is contained in the original deed of conveyance in twenty-two lots, all subsequent to those first conveyances which contain no such language.
The first question for the court, and because of the court's conclusion, the only question for the court is what was the general plan or scheme of the common grantor in developing the property. Guidance is found in our Supreme Court's analysis CT Page 10433 of the case of Whitton v. Clark, 112 Conn. 28 (1930). The developer Joseph Whitton originally acquired land in Stamford in 1866, and over the next five years he conveyed out eight building lots that contained a stipulation requiring the construction of a dwelling unit in a certain price range. Thereafter, in 1871, he recorded a map which delineated fifty-four building lots, among them the eight already conveyed, and a layout of streets and rights of way. The map itself contained no statement of any conditions or restrictions.
Over the next fifty-seven years, the developer and his heir conveyed out approximately twenty-two more lots some of which contained a similar restriction governing dwellings, some of which were without any restrictions, and four of which were conveyed to a church, with language which allowed a church to build on and use the property as it saw fit.
The plaintiff Harold Whitton owned a number of contiguous lots, some of which contained the stipulation regarding the building of a certain price of dwelling and some of which were silent of any restriction. Further the lots surrounded one of the small streets outlined on the map. The plaintiff sought an adjudication against other lot owners that the restrictions contained in some of the deeds did not burden his lots. He also sought a declaration that the street within the boundaries of his lots was one to which he held unencumbered title.
The case is interesting because it discusses two elements present in the instant case: the significance of a plot map filed by a common grantor who is seeking to develop a residential area, and the conflict between use restrictions in earlier deeds that are seemingly more limiting than those contained in later deeds out of the common grantor.
In that case the plot map was held to be significant as to its streets for the benefit of those owners only who held title to property abutting the streets, and they had a right, resting evidently on the map, to require that the street be kept open for purposes of access to their lots. But the map had no significance when it came to the issue of building restrictions. The issue of the individual lots outlined on it was not discussed by the court in this context, so that the map was not found to be controlling in any way regarding building restrictions, even though it appears that the map outlined building lots most suitable for single family homes, as is true in the instant case. CT Page 10434
Whitton recognizes the general proposition that purchasers of lots may rely on a "general plan, by which all the property is to be subjected to a restricted use. . .". DeGray v. Monmouth Beach Club House Co., 50 N.J. Eq. 329, 339; 24 A. 388. That reliance extends to restrictions "contained in a deed of an entire tract through which title to all lots must be traced, or [may] arise out of representations made generally to purchasers of lots, or are stated upon a map of the tract referred to in the conveyances[.]" Whitton v. Clark, supra, at 35. However, this reliance ought not to extend to "the insertion of uniform restrictions in the deeds of various owners of lots; for in such a case the earlier grantees could not be said to have bought in reliance upon the general plan of the grantor in the development of the tract." Id. at 36.
The court found that James Whitton had deeded out ten lots with a restriction limiting use to the construction of a dwelling of a certain cost and, within about a month, deeded out ten more lots with a similar but not identical restriction. A year later he began to convey lots with no restrictions pertaining to dwelling units in a certain price range. Leaving aside the lots purchased for use by the church, of the fifty-four lots, only twenty were conveyed subject to such a restriction. The court found that this fell far short of putting into effect any plan or scheme giving rise to a right "among the various lot owners to enforce among themselves the provisions of the stipulation or to impose them upon lands now owned by the plaintiff which never were in terms subjected to them." Id. at 38.
In the instant case, under this analysis, the only restriction that is common to all deeds out of the common grantor is the restriction to construct single family homes of a certain value with a certain minimum lot size. Not common to all deeds, just as in Whitton, is any further limit, such as a restriction on subdividing larger lots to the minimum size requirements imposed by the deed to the lot being subdivided.
There is no restriction on subdivision in any common deed to which all deeds relevant to this matter may be traced. In fact there is no evidence of any common deed, only evidence regarding a common grantor whom we know changed the restrictions in his deeds over time from those that are silent on the issue of subdivision to those that expressly permit it. CT Page 10435
The more recent case of Contegni v. Payne, 18 Conn. App. 47
(1989), is instructive on the factors to be used in determining whether "covenants contained in deeds executed by the owner of property who is dividing his property into building lots under a general development scheme" has so restricted the use of one or more lots under the plan that neighboring owners whose predecessors in title were grantees of the common grantor may enforce certain of the covenants against other owners. Id., at 51, citing Stamford v. Vuono, 108 Conn. 359, 364 (1928). Not in issue here are the first three of these considerations: (1) the common grantor's sale of the entire tract, (2) the common grantor's exhibiting a map or plot of the entire tract at the time of the sale of one of the parcels, and (3) the actual development of the tract in accordance with the restrictions. Contegni v. Payne, supra, at 53. The fourth factor, the uniformity of the restrictions in the deeds from the common grantor, militates against the plaintiff's claim here. Of the 52 lots conveyed out by the common grantor, all appear from the evidence to have contained restrictions limiting use to a single family dwelling of a minimum size and first cost. None of the deeds specifically restricts subdivision, and 18 of the deeds specifically allow it with the restriction that no such lot shall be less than a certain size nor with less than a certain frontage.
From all of the evidence regarding the conveyances at issue here, it is the conclusion of the court that the grantor's intention as to the general plan or scheme was one of developing a residential area of single family homes, but that it was not part of the general plan or scheme to restrict the subdivision of the defendant's lots except as described in the defendant's deeds. This is further supported by the language in each deed which states that "each and all of the foregoing covenants and restrictions" in the deed are enforceable against subsequent grantees and assigns of the same property. It is not a fair reading of such language to suggest that it means that the restrictions contained in one deed are to be construed as applicable not solely to the property described in that deed, but to other property which may also have once been owned by a common grantor.
Having so found, the special defenses of the defendant relating to the Marketable Record Title Act do not warrant discussion. CT Page 10436
Judgment is entered for the defendant.
PATTY JENKINS PITTMAN JUDGE, SUPERIOR COURT