[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR JUDGMENT
FACTS
The plaintiffs, Robert G. McQuarrie and Norma L. McQuarrie, instituted this declaratory judgment action against the defendants to determine whether they have a right to subdivide their property into two building lots.[1] The plaintiffs are the owners of a parcel of land, with a house built thereon, that is part of a twenty-nine lot subdivision in Thomaston, Connecticut. The plaintiffs received approval from the Thomaston Zoning Commission to subdivide their parcel into two lots, and they now plan to sell the second lot to their daughter so that she may construct a home thereon. A restrictive covenant in the plaintiffs' deed, however, limits each lot in the tract to one single-family dwelling. In light of this restriction, the plaintiffs seek a declaratory judgment as to whether they have a right to subdivide their property.
The following facts are taken from the pleadings and a CT Page 4699 stipulation of facts submitted by the parties. Prior to the enactment of zoning in the Town of Thomaston, Harold W. Gill and Ebba G. Gill subdivided into twenty-nine lots a tract of land that they owned in Thomaston. A map of this subdivision was filed in the land records of the town of Thomaston. The Gills were the grantors of all twenty-nine lots pursuant to a general scheme of development, and each deed transferring title from them contains a restrictive covenant limiting each lot to one single-family dwelling. In 1958, the Gills conveyed to the plaintiffs lot 20 of the subdivision, and the deed of conveyance, which was recorded in the Thomaston land records, contained the restrictive covenant.
The plaintiffs have received approval from the Thomaston Zoning Commission to subdivide their lot into two lots, and they intend to sell the second lot to their daughter so that she may construct a house thereon. The defendant Franklin E. Brody, who, along with the defendant Mary Ellen Brody, owns lot 8 of the original subdivision, has threatened the plaintiffs with a lawsuit to enforce the restrictive covenants. Presently, no lot in the development contains more than one single family dwelling.
The plaintiffs now move for judgment in this declaratory judgment action. In support of their position, they filed a memorandum of law. In opposition to the plaintiffs' motion, the defendants Franklin E. Brody and Mary Ellen Brody also filed a memorandum of law. Additionally, these parties submitted a stipulation of facts with exhibits.
Discussion
"The purpose of a declaratory judgment action . . . is to `secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties.'" (Citation omitted.) Wilson v. Kelley, 224 Conn. 110,115, 617 A.2d 433 (1992). The jurisdiction of the trial court over declaratory judgment actions depends upon compliance with the requirement that "all person having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof." Practice Book Sec. 390; Serrani v.Board of Ethics, 225 Conn. 305, 308, 622 A.2d 1009 (1993). In this case, the plaintiffs have complied with Practice Book Sec. 390's notice requirement by naming as defendants all parties who have an interest in any of the twenty-nine lots of the original subdivision. CT Page 4700
Typically, the issue of the enforcement of a restrictive covenant arises in an action for an injunction, where a party seeks to enjoin a defendant from violating certain deed restrictions. See Contegni v. Payne, 18 Conn. App. 47, 557 A.2d 122, cert. denied211 Conn. 806 (1989). The issue in this case arises in a distinct procedural setting, since the plaintiffs preliminarily seek a declaratory judgment as to whether they have a right to subdivide their lot despite a restrictive covenant. The issues for the court's consideration, though, are the same: whether the defendants may enforce the restriction in the plaintiffs' deed; and, if so, what is the precise scope and meaning of that restriction. For if the defendants have the right to enforce the restrictive covenant, and if the scope and meaning of the restriction preclude the plaintiffs from building a home on the second lot, the plaintiffs would not have a right to subdivide.
Generally, "restrictive covenants fall into three classes: (1) mutual covenants in deeds exchanged by adjoining landowners; (2) uniform covenants contained in deeds executed by the owner of property who is dividing his property into building lots under a general development scheme; and (3) covenants exacted by a grantor from his grantee presumptively or actually for the benefit and protection of his adjoining land which he retains." (Citations and internal quotation marks omitted.) Contegni v. Payne, supra,18 Conn. App. 51-52. "With respect to the second class of covenants, any grantee under such a general or uniform development scheme `may enforce the restrictions against any other grantee. Pulver v.Mascolo, 155 Conn. 644, 650, 237 A.2d 97 (1967).'" (Internal quotation marks omitted.) Id., 52, quoting Marion Road v. Assn. v.Harlow, 1 Conn. App. 329, 333, 472 A.2d 785 (1984).
 The doctrine of the enforceability of uniform restrictive covenants is of equitable origin. The equity springs from the presumption that each purchaser has paid a premium for the property in reliance upon the uniform development plan being carried out. While that purchaser is bound by and observes the covenant, it would be inequitable to allow any other landowner, who is also subject to the same restriction, to violate it. Whitton v. Clark, 112 Conn. 28, 35, 151 A. 305 (1930).
 This simple explanation is most persuasive where a challenged restriction is contained in a deed to an entire tract through which title to all CT Page 4701 lots can be traced, or where the restriction is stated on a map of the tract referenced to in the conveyances. Id.
Contegni v. Payne, supra, 52.
The parties have stipulated that the original grantors, the Gills, conveyed all twenty-nine lots of the tract "pursuant to a general scheme of development." Additionally, the following stipulated facts support the existence of a common grantor's intent to develop the land according to a general scheme; the Gills were the common grantor of all twenty-nine lots; the Gills' filed a subdivision map of the tract in the Thomaston land records; all the deeds of conveyance from the Gills contain restrictive covenants of similar or identical language; and, no lot in the development has more than one single-family dwelling erected on it. See Contegni v. Payne, supra, 53 (setting forth four factors to help determine the existence of the common grantor's intent to develop according to a uniform plan.). Since the common grantors' intended to divided the tract according to a general development scheme, the defendants, as grantees under that general scheme, have a right to enforce the restrictive covenants.
The court must now address the precise meaning and scope of the restrictions contained in the plaintiffs' deed. "The meaning and effect of the [restrictions] are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances." (Citations and internal quotation marks omitted.) Contegni v. Payne, supra, 18 Conn. App. 52,65, quoting Kelly v. Ivler, 187 Conn. 31, 39, 450 A.2d 817
(1982). "`The primary rule of interpretation of such [restrictive] covenants is to gather the intention of the parties from their words, by reading, not simply a single clause of the agreement but the entire context, and where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met.'" Contegni v. Payne, supra, 65, quoting B.T. Harris Corporation v. Bulova, 135 Conn. 356, 361,64 A.2d 542 (1949).
The deed conveying the property to the plaintiffs contains the following building and use restrictions:
 1. Not more than one single family dwelling shall be erected on each lot. 2. Each said dwelling CT Page 4702 house shall cost not less than $6500.00 above foundation. 3. No building shall be erected within 30 feet of the circle of Twin Oak Drive. 4. No commercial building or business of any kind shall be conducted on the premises. 5. No open cesspools or open sewers shall be located within boundaries of said lot.
The plaintiffs argue that the common grantors' intent was not to have a uniform plan for lot shape or size, but instead their intent was to have single-family residences in a residential setting without commercial activity, without open sewers and with a 30 foot setback. They also contend that since there is no express restriction on subdividing lots, they are not prohibited from so doing. The defendants, however, point to the express language of the covenants as the indicator of the common grantors' intent, and contend that the covenant restricts "each lot" to "one single family dwelling." Since both the plaintiffs' deed and the subdivision map show the plaintiffs' lot as an individual lot, the defendants argue that only one single-family dwelling is permitted on that lot.
In Contegni v. Payne, supra, the court interpreted a restrictive covenant that forbade the erection of any building on the premises except "one family house," "a stable or carriage house," and "a garage or automobile house." Id., 65-67.[2]
Similar to the plaintiffs in this case, the defendants in Contegni
wished to subdivide their parcel so that a second dwelling house could be built on the property. Id., 50. The defendants inContegni contended that their deed restriction limited the type, but not the number of dwelling houses that may be built on the property. Id., 65. The court, however, was not persuaded by the defendants' argument, and found that use of the word "one" in the covenant restricted both the number and type of houses on the lot. Id., 65.
The language in the restrictive covenant presently before the court is even clearer than that used in the Contegni case. The covenant in the plaintiffs' deed clearly restricts building to "[n]ot more than one single family dwelling . . . on each lot." The plaintiffs' interpretation of the restrictive covenant omits the grantors' use of the words "one" and "on each lot." The plaintiffs are correct that the common grantors' intent includes a neighborhood with single family residences without commercial activity, without sewers and with a 30 foot set back. In addition, CT Page 4703 however, the common grantor clearly intended to limit these features to "one" dwelling on "each" lot created in the original subdivision. The Gills created lot 20 in the original subdivision, and the restrictive covenant clearly refers to that lot when it limits the erection of single-family dwellings to "one . . . on each lot." As the court found in Contegni, supra, the language used in the covenant restricts "both the number and type of houses on a single lot," namely, one single-family dwelling on each lot.
Nothing in the other relevant provisions in the deed, or the surrounding circumstances, suggest a contrary intent. The plaintiffs point out that their proposed subdivision would fully comply with the other deed restrictions in regards to setback and sewers. The plaintiffs, however, fail to show how these other restrictions suggest an intent contrary to limiting each lot to one single-family dwelling. The common grantors' intent to restrict open sewers and establish setback guidelines is consistent with an intent to limit each lot to one single-family dwelling. Furthermore, none of the lots in the original subdivision have more than one single-family dwelling erected thereon. Therefore, the clear and unambiguous language of the deed, together with the surrounding circumstances, show that the common grantors' intent was to limit each lot in the original subdivision to one single-family dwelling.
Finally, the plaintiffs' reliance on the case of Hickson v.Noroton Manor, Inc., 118 Conn. 180, 171 A. 26 (1934), is misplaced since that decision does not address the issue presently before the court. In Hickson, the defendant subdivided a tract and, prior to the sale of all of the lots in the subdivision, shifted lot lines, thereby creating two lots where previously only one existed. Id., 182-83. All of the deeds of the lots sold in the subdivision, however, referred to an earlier filed map that did not reflect this shift in the lot lines. Id., 183-84. The plaintiff purchased one of the lots created by this shift, and brought suit to recover his purchase price claiming that his lot violated certain restrictive covenants. Id. The court found that the shifting of lot lines did not violate any restrictive covenants concerning subdividing or frontage. Id., 187. The court also found that an implied covenant that the size of the remaining lots would not be changed did not arise on the part of the vendor by virtue of the deeds' reference to the earlier map which failed to reflect the shift in lot lines. Id., 188.
In this case, the Gills divided their tract into twenty-nine CT Page 4704 lots, including lot 20, which the plaintiffs purchased. A situation analogous to Hickson would have arisen if the Gills, after filing their subdivision map but prior to selling all of the lots in their subdivision, had decided to shift lot lines and divide lot 20 into two lots. Under Hickson, the Gills would not have violated their restrictive covenants by dividing lot 20 and building two houses on the newly created lots. Hickson, however, does not address the factual scenario raised in this case, where grantees, not a developer or common grantor, seek to subdivide despite express restrictions in their deed. Therefore, that decision is not pertinent to this case.
In conclusion, the defendants, as grantees under a general scheme, may enforce the restriction that prohibits the plaintiffs from building more than one single-family dwelling on lot 20. The court finds that since the restrictive covenant in the plaintiffs' deed prohibits the construction of a second single-family dwelling on lot 20, the plaintiffs are prohibited from subdividing that lot to create two building lots.
HON. RICHARD A. WALSH, J.