## HARLAN DENNY *v.* CESARE TOMEI ET AL.
### (AC 31577)

Bishop, Gruendel and Peters, Js.

Argued April 14—officially released June 21, 2011

*Bernard Pellegrino*, for the appellant (plaintiff).

*Kenneth A. Votre*, for the appellees (defendants).

*Opinion*

PETERS, J. "From early times, under the common law, highways have been established in this state by dedication and acceptance by the public." *Wamphassuc Point Property Owners Assn.* v. *Public Utilities Commission*, 154 Conn. 674, 680, 228 A.2d 513 (1967).[1] In this declaratory judgment action, an abutting landowner claims that he has the right to build a road on property that, in a 1961 recorded subdivision map, was dedicated for future highway use. The town has manifested its intent to accept the road if he builds it. Because the landowner's property was never part of

---

[1] See E. Sostman & J. Anderson, "The Highway and the Right of Way: An Analysis of the Decisional Law in Connecticut Concerning Public, Private and Proposed Roads from Establishment to Abandonment," 61 Conn. B.J. 299 (1987).

the subdivision, the trial court held that the landowner had no standing to pursue his claim. The landowner has appealed. We affirm the judgment of the trial court.

On September 26, 2008, in an action for a declaratory judgment filed pursuant to Practice Book § 17-54, the plaintiff, Harlan Denny, asked the court to affirm that he and the town of Orange (town)[2] have a right to build a road on properties owned by the defendants, Cesare Tomei, Josephine Tomei, James Brennan and Susan Brennan, in accordance with a recorded subdivision map reserving a part of the defendants' property "for future highway purposes." The trial court granted the motion filed by James Brennan and Susan Brennan to dismiss the plaintiff's complaint for lack of standing. The plaintiff has appealed.

In its memorandum of decision, the court recited the undisputed facts that govern this appeal. The plaintiff and the defendants are the owners of contiguous residential properties that presently have separate access to public roads.[3] The defendants' properties include a strip of land that a subdivision map, recorded by David Grillo in 1961, described as "reserved for future highway purposes." The plaintiff's property has never been part of this subdivision.

Although the defendants acquired title to the reserved strip of land by adverse possession in 1991, prior litigation has established that the recording of the Grillo map served as a dedication of the reserved strip of land to the town for highway purposes.[4] The town has not

---

[2] The town is not a party to this action.

[3] The defendants have access to their properties by way of Cricket Lane, a public road that parallels the southern boundary of their properties. The plaintiff has access to his property, which abuts the northern boundary of the defendants' properties, by way of Dogwood Road, which also is a public road.

[4] After the defendants acquired title to this strip of land by adverse possession, they unsuccessfully attempted to revoke the dedication. In earlier litigation between the parties or their predecessors in title, the trial court, *Hodgson, J.,* held that revocation required the approval of the town zoning

formally accepted the reserved strip. In June, 2008, however, its zoning commission allegedly accepted the plaintiff's subdivision application that included a subdivision map showing a division of the plaintiff's property into two new lots. Utilizing the reserved strip of land that is the subject of the present litigation, the subdivision application proposes the construction of a road from the southern end of the plaintiff's property to the public road that borders the southern end of the defendants' properties.[5] Furthermore, the plaintiff alleges that, "[o]n June 18, 2008 . . . the [town's] board of selectmen . . . voted to affirmatively express its intent to accept [the dedication] as a public highway upon its improvement by [the plaintiff] in conformity with the [town's] road standards."

The court granted the motion filed by James Brennan and Susan Brennan to dismiss the plaintiff's declaratory judgment action for lack of standing. The plaintiff concedes that he does not have statutory standing to bring this action.[6] The only issue, therefore, is whether he has established that he is classically aggrieved.

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of

commission, which the defendants had not obtained. *Bartocetti* v. *Denny*, Superior Court, judicial district of New Haven, Docket No. CV-90-301390-S (May 28, 1992) (6 Conn. L. Rptr. 489).

[5] The defendants' brief states that the propriety of this decision by the zoning commission is presently the subject of an independent appeal.

[6] In prior litigation between the parties or their predecessors in title, the court, *Hodgson, J.*, held that the plaintiff does not have statutory standing under General Statutes § 13a-55 because the reserved strip of land has not been discontinued or abandoned. *Bartocetti* v. *Denny*, Superior Court, judicial district of New Haven, Docket No. CV-90-301390-S (May 28, 1992) (6 Conn. L. Rptr. 489). His status as an abutter to the defendants' property does not give him statutory standing under General Statutes § 8-8 because he is not challenging the decision of a zoning board or commission.

action . . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all the members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Gold* v. *Rowland,* 296 Conn. 186, 207, 994 A.2d 106 (2010).

The plaintiff asserts that, as a landowner whose property abuts the reserved strip of land that has been dedicated "for future highway purposes," he is classically aggrieved by the defendants' threat to initiate legal action to block his ability to construct the road in accordance with the dedication. In his view, our common-law cases have established the rule of law that the recordation of a map dedicating property for future rights of passage creates an easement by implication[7] in favor of those who were reasonably foreseeable beneficiaries of such rights. He further asserts that an abutting landowner who bought his property in reliance on the recorded map comes within the class of foreseeable beneficiaries.

---

[7] Section 2.11 (b) of 1 Restatement (Third), Property, Servitudes (2000), refers to easements by implication as servitudes by implication. Section 2.11 (b) provides: "The identity of the beneficiary of a servitude may be implied by the facts or circumstances of the transaction creating the servitude." 1 Restatement (Third), supra, § 2.11 (b), p. 153.

At trial, and in this appeal, the plaintiff's argument in favor of standing relies on what he describes as the *Whitton* rule that our Supreme Court established in *Lucy* v. *Oram*, 114 Conn. 642, 159 A. 655 (1932), *Whitton* v. *Clark*, 112 Conn. 28, 151 A. 305 (1930), and *Derby* v. *Alling*, 40 Conn. 410 (1873). The trial court agreed with the plaintiff that each of these cases recognized that subsequent lot owners may have implied easements to enforce property rights that are documented in a recorded subdivision map.

The court further observed, however, that, in the cited cases, the so-called *Whitton* rule has been successfully invoked by only a limited class of beneficiaries. In each of the cases on which the plaintiff relied, "the lot owners acquired their lots from, or could trace their acquisition to, a common grantor that (1) made a map showing the newly created lots and dedicated paper road, and then (2) transferred those lots by deeds that referred to the map." Because the plaintiff did not allege that his property was in Grillo's chain of title, the court granted the motion to dismiss his complaint.

The plaintiff's appeal is governed by a well established standard of review. "[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute. . . . Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, our review is plenary." (Internal quotation marks omitted.) *McWeeny* v. *Hartford*, 287 Conn. 56, 64, 946 A.2d 862 (2008).

In his brief to this court, the plaintiff does not challenge the propriety of the court's determination that, because his property was not part of the original Grillo subdivision, he does not have standing under the *Whitton* rule as articulated in the cases that he cites. He

maintains that he, nonetheless, has an easement by implication to construct a road on the defendants' properties because, at the time when the subdivision was approved, it was reasonably anticipated that the land to the north of the subdivision, the land he now owns, was to benefit from the creation and dedication of the road. He represents that the town required Grillo to dedicate the reserved strip of land for future highway purposes for this very reason. Further, he asserts that he bought his property in reliance on the reservation in the Grillo map.

The defendants challenge both the factual predicate and the legal validity of the plaintiff's argument. They note the absence of evidence in the record supporting the plaintiff's factual allegations, which do not appear in his complaint. They emphasize that the plaintiff's own deed does not purport to grant him any rights of access to or from the Grillo subdivision. They ask us, therefore, to uphold the trial court's construction and application of the *Whitton* rule and to affirm the court's judgment.

The plaintiff's appeal comes to us in an unusual posture. He acquiesces in the trial court's analysis of the case law that he cited at trial. He asks us to find new facts, including his reliance on the reservation in the map, and to make new law without having given the trial court the opportunity to do so. Our rules of practice are to the contrary. See Practice Book §§ 60-5 and 61-10.

To overcome these significant impediments to reversal of the court's careful and reasoned rejection of the plaintiff's arguments at trial, he would have to present compelling authority that evidence of third party reliance on a recorded document is sufficient to establish an easement by implication. The plaintiff has not cited such a case and our own research indicates that the law is to the contrary.

In *McBurney* v. *Cirillo*, 276 Conn. 782, 889 A.2d 759 (2006), overruled in part on other grounds by *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 284–89, 914 A.2d 996 (2007), our Supreme Court revisited the role that a map plays in the creation of an easement by implication. It observed that "much of our case law setting out the circumstances under which a map creates an implied easement specifically has involved the consideration of streets and highways delineated on such [a map] . . . ." Id., 799. It identified two theories under which a map may imply an easement: "first, under an equitable estoppel theory, an implied easement exists in a lot owner when the owner reasonably anticipated the use of the streets disclosed on the map that would prove beneficial to him . . . and, second, a lot owner may acquire an implied easement by virtue of a map under an implied covenant theory, if the [anticipated] use served as an inducement to the purchase of the lot." (Citation omitted; internal quotation marks omitted.) Id. Under either theory, the court instructed the fact finder to examine "(1) the intention of the parties, and (2) [whether] the easement is reasonably necessary for the use and normal enjoyment of the dominant estate." (Internal quotation marks omitted.) Id., 800.

The judgment of the court in this case is consonant with the principles stated in *McBurney*. Concededly, on the record before us, "the intention of the parties" cannot be dispositive because the parties' interests are irreconcilably inconsistent. *McBurney* suggests that, under such circumstances, a trier of fact reasonably may inquire into the intent of the grantor; id., 804; and that intent can reasonably be presumed to have been to provide a benefit to the owners of property in the subdivision and not to outsiders.[8] More important, the

---

[8] Section 2.14 of 1 Restatement (Third), Property, Servitudes (2000), titled "Servitudes Implied From General Plan," provides in relevant part: "Unless the facts or circumstances indicate a contrary intent, conveyance of land

plaintiff has not alleged that construction of a road over the defendants' properties is reasonably *necessary* for the use and normal enjoyment of his own property.

We conclude, therefore, that our law of implied easements, both as stated in the cases that the parties presented to the trial court and in the more recent precedent of our Supreme Court, supports the reasoned opinion of the trial court that the plaintiff does not have standing to bring a declaratory judgment action under the circumstances of this case.

The judgment is affirmed.

In this opinion the other judges concurred.

pursuant to a general plan of development implies the creation of servitudes as follows: (1) Implied Benefits: Each lot *included within the general plan* is the implied beneficiary of all express and implied servitudes imposed to carry out the general plan. . . ." (Emphasis added.)