## MICHAEL ABEL ET AL. *v.* CELESTE M. JOHNSON (SC 20436)

Robinson, C. J., and McDonald, D'Auria, Kahn and Ecker, Js.*

*Syllabus*

The plaintiff property owners sought to enjoin the defendant, who owned
abutting property on which she operated a landscaping business, from
violating a restrictive covenant that limited the use of the defendant's
property to residential purposes only. The restrictive covenant was
contained in a 1956 deed by which the original grantors conveyed a
tract of real property to a housing developer, E Co. The 1956 deed,
which was recorded in the land records of the city in which the property
is located, provided that the covenants contained therein "shall run with
the land . . . be binding upon the grantee, its successors and assigns,"
and inure to the benefit of original grantors' "remaining land . . . lying
westerly of the premises" conveyed. In 1961, E Co. recorded in the land
records a declaration of restrictions, which included prohibitions against
the keeping of poultry and the parking of commercial vehicles outside.
E Co. thereafter subdivided the property and conveyed two of the lots
to the parties' predecessors in title. The deeds in the parties' chains of
title contained language providing that the lots were being conveyed
"subject to" the restrictive covenants contained in the 1956 deed and
the declaration. The plaintiffs alleged that the defendant had violated
those restrictive covenants by operating a landscaping business and
maintaining chickens on her property. At trial, the deeds to twenty-four
homes located in the subdivision were admitted into evidence. The
deeds to all of the homes located on the parties' street contained the
same "subject to" language, and the remaining deeds in evidence all
contained residential use restrictions, although two of them lacked the
same "subject to" language. Relying on this evidence, the trial court
concluded that the parties' properties were part of a common develop-
ment scheme, which gave the plaintiffs standing to enforce the deed
restrictions against the defendant. The trial court rendered judgment
for the plaintiffs and ordered the defendant to cease and desist from
violating the restrictive covenants, and the defendant appealed to the
Appellate Court. Observing that the restrictive covenants set forth in
the 1956 deed were intended to inure to the benefit of the original
grantors' remaining, "westerly" land and that there was no language

* This case originally was scheduled to be argued before a panel of this
court consisting of Chief Justice Robinson, and Justices McDonald, D'Auria,
Kahn and Ecker. Although Justice D'Auria was not present at oral argument,
he has read the briefs and appendices, and listened to a recording of the oral
argument prior to participating in this decision.

Abel *v.* Johnson

therein indicating that the covenants were meant to benefit the original or subsequent grantees of the 1956 deed, such as the plaintiffs, the Appellate Court concluded that the plaintiffs lacked standing to enforce the residential use covenant because there was no allegation that the plaintiffs were the original grantors or their successors in interest. Accordingly, the Appellate Court reversed the trial court's judgment to the extent that the trial court enforced the residential use restrictive covenant contained in the 1956 deed and vacated that court's orders of injunctive relief related to that covenant. On the granting of certification, the plaintiffs appealed to this court. *Held* that, because the language in the E Co. deeds conveying the properties to the parties and their predecessors in title "subject to" the original grantors' 1956 deed created a general development scheme, the Appellate Court incorrectly concluded that the plaintiffs lacked standing to enforce the residential use restriction, and, accordingly, this court reversed in part the judgment of the Appellate Court and remanded the case with direction to affirm the judgment of the trial court enforcing the restrictive covenant: when a common grantor, under a general development scheme, divides its property into lots that are to be sold and the deeds thereto contain substantially uniform restrictions, any grantee may enforce the restrictions against any other grantee, and whether a common grantor intended to establish a uniform plan of development is determined by the language of the relevant conveyance instruments in light of the surrounding circumstances; in the present case, the language of the deeds by which E Co. subdivided and conveyed its property, as well as the surrounding circumstances, strongly supported the conclusion that E Co. intended to establish a general plan of development limited to residential use through the use of the "subject to" language, as those deeds effectuated a new subdivision, a map of which was contemporaneously recorded in the land records of the city in which the property was located and referenced in the deeds, and the declaration expressly indicated that it was intended to "protect property values" and restricted the use and keeping of commercial vehicles, suggesting that E Co. had intended to eliminate commercial activity on the property; moreover, those restrictions were all recorded in the land records of the city in which the property was located, they were available for any searcher to find, and all of the deeds admitted into evidence contained either the same "subject to" language or another residential use restriction; furthermore, contrary to the conclusion of the Appellate Court, the fact that the 1956 deed, by its express terms, inured to the benefit of the original grantors' land "lying westerly" to the premises they conveyed did not render the residential use restriction unenforceable by subsequent grantees of E Co., such as the plaintiffs, because, even though there was no evidence that the original grantors desired to create a general development scheme, this court was aware of no authority that stood for the proposition that a particular restriction cannot be a grantor retained restriction

Abel *v.* Johnson

enforceable by one party, and part of a common scheme of development enforceable as a matter of equity by another.

Argued March 29—officially released August 20, 2021**

*Procedural History*

Action for, inter alia, injunctive relief barring the defendant from violating restrictive covenants on certain of the defendant's real property, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Hon. Edward R. Karazin, Jr.*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment for the plaintiffs, from which the defendant appealed to the Appellate Court, *Keller* and *Moll, Js.*, with *Beach, J.*, concurring in part and dissenting in part, which reversed in part and vacated in part the trial court's judgment; thereafter, the plaintiffs, on the granting of certification, appealed to this court. *Reversed in part*; *judgment directed*.

*John R. Harness*, for the appellants (plaintiffs).

*Austin S. Brown*, with whom was *Heather M. Brown Olsen*, for the appellee (defendant).

*Opinion*

ROBINSON, C. J. In this certified appeal, we consider whether deed language providing that the grantees took title "subject to" an earlier deed, which established a residential use restriction for the benefit of the original grantor's retained property, rendered that restriction enforceable against those grantees by adjoining property owners whose deeds contain similar "subject to" language, pursuant to a common plan of development theory. The plaintiffs, Michael Abel and Carol Abel,

** August 20, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Abel *v.* Johnson

appeal, upon our grant of their petition for certification,[1] from the judgment of the Appellate Court reversing in part the judgment of the trial court, rendered after a court trial, granting injunctive relief against the defendant, Celeste M. Johnson, enforcing one restrictive covenant limiting the use of the property to residential use, which was contained in a deed that was executed by the original grantors of the parties' real properties, and two other use restrictions that appeared in a separate declaration that applied to the properties. See *Abel* v. *Johnson*, 194 Conn. App. 120, 142–43, 156, 220 A.3d 843 (2019). On appeal, the plaintiffs claim that the Appellate Court incorrectly concluded that they lacked standing to enforce the residential use restriction. We agree and, accordingly, reverse in part the judgment of the Appellate Court.

The record reveals the following facts and procedural history, much of which are aptly set forth in the opinion of the Appellate Court. The plaintiffs own real property located at 37 Mill Stream Road in Stamford, where they reside, and the defendant owns abutting real property located at 59 Mill Stream Road in Stamford, where she resides with her husband. The parties' properties are in an area of Stamford known as the Saw Mill neighborhood, where some of the properties are served by a

---

[1] We granted the plaintiffs' petition for certification to appeal, limited to the following issues: (1) "Does the 'subject to' language in the deeds only provide notice of prior restrictions or does it have the substantive effect of creating new obligations on the grantees and their successors?" And (2) "Did the Appellate Court correctly determine that the plaintiffs lacked standing to enforce the restrictive covenant in the original deed that limited the use of the defendant's property for residential purposes only?" *Abel* v. *Johnson*, 334 Conn. 917, 222 A.3d 104 (2020).

We note that the first certified question is encompassed topically within the broader, second certified question. Accordingly, we do not treat them as separate certified issues. See, e.g., *State* v. *Raynor*, 334 Conn. 264, 266 n.1, 221 A.3d 401 (2019) (court may rephrase certified question to more accurately reflect issue).

Abel *v.* Johnson

voluntary neighborhood association known as the Saw Mill Association. See footnote 6 of this opinion.

"In 1956, Horace Havemeyer and Harry Waldron Havemeyer (original grantors) conveyed to a housing developer, Empire Estates, Inc. (Empire Estates), 166.1229 acres of real property in Stamford. The deed related to this conveyance is recorded in volume 792, page 118, of the Stamford land records. In relevant part, the deed provides: 'This deed is *given and accepted* upon the following express covenants and agreements *which shall run with the land herein conveyed and shall be binding upon the grantee, its successors and assigns, and shall [i]nure to the benefit of the remaining land of the grantors lying westerly of the premises herein conveyed*:

" '(1) *Said premises shall be used for private residential purposes only* (except that a doctor or dentist having a home on said premises may locate his office therein if such use is permitted by the applicable zoning regulations), and *no buildings shall be erected or maintained upon said premises except single-family dwelling houses and appropriate outbuildings*.

" '(2) Said tract shall not be subdivided for building purposes into plots containing less than one (1) acre in area, and not more than one (1) such dwelling house shall be erected or maintained on any such plot.'[2]

---

[2] "In 1957, an agreement between the original grantors, Empire Estates, and Country Lands, Inc., to whom a portion of the land at issue had been conveyed by Empire Estates, was recorded in volume 808, page 355, of the Stamford land records." *Abel* v. *Johnson*, supra, 194 Conn. App. 132 n.4. "[T]he agreement modified the first restrictive covenant in the 1956 deed, set forth previously, as follows: '[T]hat portion of [the] restrictive covenant . . . which is contained within parentheses shall be of no further force and effect and there shall be substituted in lieu of the language contained within parentheses, effective from the date hereof, the following language: (except that a residence may be used for professional purposes by a member of a profession occupying the same as his home to the extent that such use is permitted from time to time by the applicable zoning regulations of the city of Stamford).' " Id. The Appellate Court's conclusion that the 1957 agreement "does not affect [the] analysis of the present claim" is undisputed. Id.

Abel *v.* Johnson

"In 1961, Empire Estates, through its trustees, Harry E. Terhune and Gordon R. Paterson, executed a declaration of restrictions (declaration) that was recorded in volume 917, page 114, of the Stamford land records. The declaration, which included thirty-five articles and set forth a wide variety of restrictions, *did not contain a provision restricting the applicable tracts to private residential use only*. In relevant part, the declaration states: 'Witnesseth, that said trustees hereby place upon the land records the following restrictions, covenants, agreements, reservations, easements and information which shall govern the use of any tract of land whenever imposed in a deed of conveyance, by reference to this declaration, from any person or corporation authorized by either of the said trustees or their successors, by instrument recorded in the land records, *to impose the terms hereof on portions of land owned by such person or corporation and shall run with the land so conveyed and shall [i]nure to the benefit of the owners of tracts of land affected by the terms hereof*, to the person or corporation authorized to impose the terms hereof and, where applicable, to the municipality . . . .'

"Article 2 of the declaration provides: 'No animals, poultry or water fowl, except usual pets quartered within the family dwelling at night, shall be kept on a [t]ract.[3] Exceptions to this provision may be made for not over two year periods if consented to in writing by the [p]urchaser[4] of each [t]ract within two hundred (200) feet of the [t]ract where the exception is proposed.' . . .

_____

[3] "The declaration defines a '[t]ract' as '[a] parcel of land shown and delineated on a map filed in the land records of the MUNICIPALITY which has been conveyed by the DEVELOPER to a PURCHASER.' " *Abel* v. *Johnson*, supra, 194 Conn. App. 133 n.5.

[4] "The declaration defines a '[p]urchaser' as '[a]ny [p]urchaser of a TRACT upon which this [d]eclaration has been imposed, and his, her or its successors in title.' " *Abel* v. *Johnson*, supra, 194 Conn. App. 133 n.6.

Abel *v.* Johnson

"Article 8 of the declaration provides: 'Any commercial vehicle used by an occupant of a [t]ract shall be kept within a garage with doors closed, except for brief periods required for loading or unloading.'

"The final article of the declaration, [a]rticle 35, provides in relevant part: '*The intent of this [d]eclaration is to protect property values.* [The] [d]eveloper[5] intends to enforce the provisions of this [d]eclaration whenever it feels its interest may be threatened. Enforcement action may be taken, with or without [the] [d]eveloper's participation, by any aggrieved [p]urchaser of a [t]ract, or by any group of aggrieved [p]urchasers represented by a [p]roperty [o]wner's [a]ssociation, or otherwise.

" 'Enforcement of this [d]eclaration or any part thereof shall be by proceedings at law or in equity against any person or persons violating or attempting to violate any right herein contained, and said proceedings may be either to restrain any violation thereof, to recover damages therefor, or to require corrective measures to accomplish compliance with the intent of this [d]eclaration.' . . .

"The deed conveying the property known as 37 Mill Stream Road to the plaintiffs, which was recorded on September 26, 1977, in volume 1680, page 100, of the Stamford land records, provides in relevant part: 'Said premises are conveyed *subject to* any restrictions or limitations imposed or to be imposed by governmental authority, including the zoning and planning and wetlands rules and regulations of the [c]ity of Stamford; *restrictive covenants and agreements contained in a certain deed from Harry Waldron Havemeyer et al to Empire Estates, Incorporated dated August 14, 1956*

---

[5] "The declaration defines a '[d]eveloper' as '[t]he person or corporation authorized by either of the trustees executing this [d]eclaration or their successors to make subject to this [d]eclaration any property conveyed by said person or corporation.' " *Abel* v. *Johnson*, supra, 194 Conn. App. 133 n.7.

Abel *v.* Johnson

*and recorded in said records in* [b]*ook 792 at* [p]*age 118,* as modified by an [a]greement dated March 27, 1957 and recorded in said records in [b]ook 808 at [p]age 355; *a declaration made by Harry E. Terhune and Gordon R. Paterson, as trustees, dated March 15, 1961 and recorded in said records in* [b]*ook 917 at* [p]*age 114 . . . .*'

"Materially similar language appears in the defendant's chain of title, as well.[6] In a deed conveying the property known as 59 Mill Stream Road and recorded on September 30, 1983, in volume 2296, page 146, of the Stamford land records, the following language appears: 'Said premises are conveyed *subject to* planning and zoning rules and regulations of the [c]ity of Stamford and any other [f]ederal, [s]tate or local regulations, taxes and assessments of the [c]ity of Stamford becoming due and payable hereinafter, *restrictive covenants and agreements as contained in a deed from Harry Waldron Havemeyer, et al to Empire Estates, Incorporated dated August 14, 1956 and recorded in the land records of said Stamford in book 792 at page 118,* except as the same are modified by an agreement dated March 27, 1957 and recorded in said records in book 808 at page 355, *the terms of a declaration made by Harry E. Terhune and Gordon R. Paterson, as* [t]*rustees, dated March 14, 1961 and recorded in said records in book 917 at page 114,* the rights of others, including the [c]ity of Stamford, in and to any brook, river, stream or water flowage easement crossing and bounding said tract of land.' *This 1983 deed is referred to in the 2006 deed conveying the property to the defendant,* which

---

[6] As we noted previously, it "does not appear to be in dispute that the parties' properties are located in the Saw Mill Association, a 'neighborhood association' that encompasses 142 properties on eight contiguous streets in Stamford. The plaintiffs presented evidence that the restrictive covenants that appear in the chain of title of the parties' properties are found in the chain of title of several other property owners in the Saw Mill Association." *Abel* v. *Johnson,* supra, 194 Conn. App. 134 n.8.

is recorded in volume 8602, page 54, of the Stamford land records.'' (Emphasis added; footnote altered; footnotes in original.) *Abel* v. *Johnson*, supra, 194 Conn. App. 131–35.

The plaintiffs brought a one count complaint, alleging that, ''by conducting a landscaping business'' and ''maintaining chickens and chicken coops'' on her property, the defendant had violated three restrictive covenants to which both of their properties are subject, and that are ''common to all tracts or parcels of land located within the area or subdivision known as the Saw Mill Association.'' The plaintiffs alleged that the defendant had ''not obtained consent from the Saw Mill Association . . . the plaintiffs or any neighboring property owner to maintain chickens . . . or to conduct a landscaping business from the defendant's property.'' The plaintiffs further ''alleged that they had demanded that the defendant cease and desist the activities at issue, but the defendant had failed to comply with their demand. The plaintiffs alleged that they had suffered and would continue to suffer irreparable harm as a result of the activities at issue, and that they lacked an adequate remedy at law. The plaintiffs sought injunctive relief ordering the defendant to immediately cease and desist from violating the restrictive covenants and such other relief as the court deemed equitable and proper.'' *Abel* v. *Johnson*, supra, 194 Conn. App. 124.

The case was tried to the court over two days. The trial court rejected the defendant's argument that the 1956 ''deed restrictions on her property are the result of covenants exacted by the original landowner from the developer of the Saw Mill Association for the benefit and protection of his adjoining land [that] he retains, and, as a result, the [plaintiffs] cannot enforce the [1956] deed restrictions.'' Relying on the plaintiffs' submission of ''multiple deeds from various properties of the Saw Mill Association that contained the restrictive cove-

Abel *v.* Johnson

nant[s] [that] they seek to enforce,'' the trial court concluded that the parties' properties were part of a common plan or scheme of development, which gave the plaintiffs standing to ''enforce the deed restrictions against the defendant.'' After rejecting the special defenses raised by the defendant,[7] the trial court found that the defendant had violated the restrictive covenants[8] and rendered judgment for the plaintiffs, ordering the defendant, inter alia, to ''immediately cease and desist from violating the restrictive covenants . . . .''[9]

The defendant appealed from the judgment of the trial court to the Appellate Court, claiming, inter alia, that the trial court incorrectly ''concluded that the plain-

[7] The defendant denied the plaintiffs' allegations and ''raised four special defenses sounding in the following legal theories: (1) equitable estoppel and waiver; (2) unclean hands; (3) ripeness, mootness, and frustration of purpose; and (4) a claim that the action was time barred pursuant to General Statutes § 52-575a in that the plaintiffs did not commence the action within three years from the time that they had actual or constructive knowledge of the alleged violations of the restrictive covenants. By way of a reply, the plaintiffs denied all of the special defenses.'' (Footnote omitted.) *Abel* v. *Johnson*, supra, 194 Conn. App. 124–25.

[8] The trial court determined that the removal of the chickens from the defendant's property had not rendered that claim moot, despite the defendant's testimony that she ''does not have plans to return them to her property . . . .'' The trial court concluded that the issue was not moot because ''an injunction against the defendant regarding the enforcement of the 1961 covenant would provide practical relief to the [plaintiffs] and would resolve any ambiguity about whether the chickens could be returned to the property . . . .'' The Appellate Court agreed with this analysis as to mootness, which is not at issue in this certified appeal. See *Abel* v. *Johnson*, supra, 194 Conn. App. 154–55.

[9] The trial court's injunction also ordered the defendant (1) to refrain ''from keeping any chickens or roosters [on her] property,'' (2) to keep a certain Dodge pickup truck ''within a garage with the doors closed except for brief periods required for loading or unloading,'' (3) ''not to receive and/or store supplies, such as mulch and sod, at [her] property for resale to customers of the landscaping business,'' (4) ''not to allow parking of employees or independent contractor vehicles [on her] property while the employee or independent contractor is working for the landscaping business,'' (5) ''to stop performing chipping of tree branches from the landscaping business [on her] property''; and (6) ''to stop performing repairs of equipment used in connection with the landscaping business [on her] property.''

tiffs had standing to enforce the restrictive covenant in the 1956 deed, as modified in 1957, which generally prohibits commercial activity on the property.'' *Abel* v. *Johnson*, supra, 194 Conn. App. 136. In a divided opinion, the Appellate Court examined the language of the 1956 deed from the original grantors and relied on the ''following language [that] precedes reference to the two restrictive covenants: 'This deed is given and accepted upon the following express covenants and agreements which shall run with the land herein conveyed and shall be binding upon the grantee, its successors and assigns, *and shall [i]nure to the benefit of the remaining land of the grantors lying westerly of the premises herein conveyed* . . . .' '' (Emphasis in original.) Id., 141. The Appellate Court concluded that the ''emphasized language reflects'' that ''the restrictive covenants set forth in the 1956 deed were expressly intended to inure to the benefit of the remaining land of the original grantors that lies west of the premises conveyed in the 1956 deed. The premises conveyed included tracts that were subsequently conveyed to the plaintiffs and the defendant. . . . In the present case, the original grantors, for their benefit, extracted covenants from the grantees of the 1956 deed. Nothing in the unequivocal language of the deed either suggests that the restrictive covenant at issue was intended to benefit the original or subsequent *grantees* of the 1956 deed, or that the original grantors were dividing their property into building lots, thus imposing the restrictive covenant upon grantees as part of a general development scheme. Instead, the covenants unmistakably fall within the class of covenants exacted by a grantor from his grantee presumptively or actually for the benefit and protection of his adjoining land which he retains.'' (Emphasis in original; internal quotation marks omitted.) Id. The Appellate Court majority then concluded that, ''[b]ecause there is no allegation or evidence that

Abel *v.* Johnson

the plaintiffs are the original grantors of the 1956 deed, or their successors in interest . . . they lacked standing to enforce the restrictive covenant in the deed that limited the use of the defendant's property to residential purposes." Id., 142.

After addressing the merits of the defendant's remaining claims on appeal,[10] the Appellate Court rendered judgment (1) reversing the judgment of the trial court "enforcing the restrictive covenants . . . to the extent that the [trial] court enforced a restrictive covenant that appears in the 1956 deed and the restrictive covenant that appears in [a]rticle 8 of the declaration," (2) vacating "[t]he orders of injunctive relief related to these restrictive covenants," (3) vacating the order of the trial court "prohibiting the defendant from keeping any chickens or roosters on her property," and (4) remanding the case "to the trial court with direction to order appropriate relief that is consistent with [a]rticle 2 of the declaration."[11] Id., 156. This certified appeal followed. See footnote 1 of this opinion.

---

[10] With respect to the merits, the Appellate Court concluded that (1) the trial court improperly granted the plaintiffs injunctive relief as to article 8 of the declaration pertaining to the keeping and use of a Dodge pickup truck because they had failed to set forth an applicable claim for relief in their complaint; see *Abel* v. *Johnson*, supra, 194 Conn. App. 146–47; and (2) the trial court properly enforced article 2 of the declaration but granted relief that was overbroad under the terms of the declaration insofar as it imposed a blanket prohibition on the defendant from "keeping *any* chickens or roosters on her property . . . ." (Emphasis in original. ) Id., 155–56.

[11] We note that Judge Beach dissented in part from the judgment of the Appellate Court and concluded that the Appellate Court majority had improperly restricted its analysis to "the conveyance from the original grantors . . . ." *Abel* v. *Johnson*, supra, 194 Conn. App. 156 (*Beach, J.*, concurring in part and dissenting in part). Judge Beach agreed with the majority "that the plaintiffs have no standing to enforce restrictive covenants in the capacity of successor to any party to the transaction between the original grantors and Empire [Estates]; the covenant between the original grantors and Empire [Estates] restricting the conveyed property to residential use was exacted by a grantor from his grantee presumptively or actually for the benefit and protection of his adjoining land [that] he [retained]." (Internal quotation marks omitted.) Id., 157 (*Beach, J.*, concurring in part and dissenting in part). Judge Beach nevertheless relied on Empire Estates' subsequent subdivision of its

Abel *v.* Johnson

On appeal, the plaintiffs claim that the Appellate Court incorrectly concluded that they lacked standing to enforce the 1956 restrictive covenant. They describe as "obtuse" the defendant's position, which was embraced by the Appellate Court, that, although both parties' properties are bound by the restriction against commercial activity, only the owners of the "land lying westerly to the premises" may enforce that restriction. The plaintiffs emphasize that Empire Estates made " 'residential purposes only' a part of its uniform plan of development by agreeing to the restriction with [the original grantors] and then referring to it in all of the deeds to its subsequent purchasers," which was shown by the admission into evidence of twenty-two deeds of homes located in the area served by the Saw Mill Association, each with the same restrictions. Citing well established principles of law concerning restrictive covenants—as explained in, for example, the Appellate Court's decision in *Contegni* v. *Payne*, 18 Conn. App. 47, 51, 557 A.2d 122,

property, with a recorded "map of the subdivision," in which "every newly created lot was *subject to* identical, or substantially identical, restrictions" that "provided that the lots were 'conveyed subject to . . . restrictive covenants and agreements as contained in a deed from . . . [the original grantors] . . . to Empire Estates,' " including that prohibiting commercial use of the properties. (Emphasis added.) Id. (*Beach, J.*, concurring in part and dissenting in part). Relying on the discussion of the phrase "subject to" in the commentary to § 2.2 of the Restatement (Third) of Property, Servitudes, as it relates to the creation of new subdivisions, along with consistent restrictions contained in the 1961 declaration, Judge Beach concluded that "Empire [Estates] intended to create a common scheme of development, maintaining the restriction that only residential uses were allowed . . . ." Id., 158–59 (*Beach, J.*, concurring in part and dissenting in part); see 1 Restatement (Third), Property, Servitudes § 2, comment (d), pp. 63–64 (2000). Emphasizing the substantial uniformity "as to the lots in the subdivision," with "each lot . . . conveyed subject to the original grantors' restriction," Judge Beach observed that, "[r]egardless of the genesis of the first restrictive covenant, all of the owners in the subdivision were obligated to abide by it, and equity favors their ability to enforce it." *Abel* v. *Johnson*, supra, 160–61 (*Beach, J.*, concurring in part and dissenting in part). Accordingly, Judge Beach concluded that "the plaintiffs had standing to enforce the restriction regarding residential use . . . ." Id., 161 (*Beach, J.*, concurring in part and dissenting in part).

Abel *v.* Johnson

cert. denied, 211 Conn. 806, 559 A.2d 1140 (1989), and cert. denied, 211 Conn. 806, 559 A.2d 1140 (1989)—and relying heavily on Judge Beach's opinion dissenting in part from the judgment of the Appellate Court; see footnote 11 of this opinion; the plaintiffs argue that this evidence, and the use of the language "subject to" in Empire Estates' deeds to the parties' predecessors in title, demonstrates a common grantor's intention to establish a uniform plan of development, which would afford the plaintiffs standing to enforce the restrictive covenants as a matter of equity. The plaintiffs posit that the "only reasonable way to read the deed from Empire [Estates] into the grantees of Empire [Estates] is to harmonize the other obvious, very specific, multiple residential requirements contained therein with the other reference in the deeds that they are also being subject to only residential development as referenced to . . . the original grantors' deed into Empire [Estates]." Ultimately, the plaintiffs' arguments boil down to the point that, "[j]ust because the restriction as to private residential purposes also [i]nures to the benefit of the owners of the land of the grantors lying westerly, does not make those owners the only people that can enforce the restrictive covenant under Connecticut law."

In response, the defendant contends that the "subject to" language in the Empire Estates deeds was for notice purposes only and "should not have the substantive effect of creating new obligations on grantees and their successors." The defendant posits that the "subject to" language in the Empire Estates deeds is ambiguous and should be construed narrowly in accordance with established law governing the construction of real estate instruments.[12] See, e.g., *Bueno* v. *Firgeleski*, 180

---

[12] The defendant argues that the plaintiffs' analysis asks us to "enforc[e] deed restrictions by implication, which [is an] equitable analysis [that] inherently requires the use of extrinsic facts, circumstances and evidence outside the four corners of the respective real property instrument . . . ." The defendant criticizes this approach as "detrimental to the general public's ability to rely on explicit notice in the land records," which have served as the "authentic

Abel *v.* Johnson

Conn. App. 384, 411, 183 A.3d 1176 (2018). They rely on the Appellate Court majority's observation that the 1956 restriction is included with a host of other restrictions, such as obligations to pay taxes and to obey Stamford zoning regulations, which ''it cannot reasonably be suggested that the plaintiffs have the right to enforce . . . .'' *Abel* v. *Johnson*, supra, 194 Conn. App. 140 n.9. As a factual matter, the defendant also argues that there is not a common plan of development because (1) not all of the properties in the Saw Mill neighborhood were developed by Empire Estates, (2) the Saw Mill neighborhood contains numerous ''properties that are subject to substantially different encumbrances than'' those in the parties' deeds, at least one of which does not include a reference to the 1956 deed, and (3) membership in the Saw Mill Association itself is voluntary. See footnote 6 of this opinion. Ultimately, the defendant argues that the 1956 restriction was nothing more than a grantor retained interest that the plaintiffs lacked standing to enforce, with their standing limited to the ''no chickens'' clause in article 2 of the declaration. We, however, agree with the plaintiffs and conclude that they had standing to enforce the 1956 deed's restrictive covenant.

We begin our discussion by identifying what is and what is not in dispute. It is undisputed—indeed, the defendant conceded both in her brief and at oral argument before this court—that both of the parties' properties are bound by the residential use restriction contained in the 1956 deed from the Havemeyers, as the original grantors. It is also undisputed that the restriction in the 1956 deed, standing alone, was intended to inure to the exclusive benefit of the original grantors. What *is* in dispute is whether the ''subject to'' language in the deeds in the parties' chain of title from Empire

oracle of title in Connecticut for hundreds of years.'' See *Safford* v. *McNeil*, 102 Conn. 684, 687, 129 A. 721 (1925).

340 Conn. 240 DECEMBER, 2021 255

Abel *v.* Johnson

Estates,[13] when read in the context of the language of the restrictions in the recorded declaration, rendered the residential use restriction enforceable by the grantees of Empire Estates against each other.

We now turn to the standard of review and well established principles governing the construction of deeds and restrictive covenants. Whether the plaintiffs have the standing to enforce the 1956 deed's restrictive covenant "rests on the intent of the common grantor of the lots, as expressed in the language of the relevant deeds, considered in light of the surrounding circumstances." *DaSilva* v. *Barone*, 83 Conn. App. 365, 370, 849 A.2d 902, cert. denied, 271 Conn. 908, 859 A.2d 560 (2004). "Although in most contexts the issue of intent is a factual question on which our scope of review is limited . . . the determination of the intent behind language in a deed, considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is plenary. . . . Thus, when faced with a question regarding the construction of language in deeds, the reviewing court does not give the customary deference to the trial court's factual inferences. . . . Intent is determined by the language of the particular conveyance in light of all the circumstances and is a question of law." (Citation omitted; internal quotation marks omitted.) Id.; see, e.g., *Contegni* v. *Payne*, supra, 18 Conn. App. 51.

"Restrictive covenants generally fall into one of three categories: (1) mutual covenants in deeds exchanged by adjoining landowners; (2) uniform covenants con-

---

[13] We note that the deeds to the parties' properties that are admitted into evidence do not constitute a complete chain of title starting from the initial conveyances by Empire Estates. The defendant does not contend, however, that this apparent gap affects our determination as to Empire Estates' intent, as reflected in the language of the conveyances that are before us. Rather, the defendant contends that the "subject to" language is for notice purposes only, rather than to create a new servitude.

Abel *v.* Johnson

tained in deeds executed by the owner of property who is dividing his property into building lots under a general development scheme; and (3) covenants exacted by a grantor from his grantee presumptively or actually for the benefit and protection of his adjoining land [that] he retains.'' (Internal quotation marks omitted.) *DaSilva* v. *Barone*, supra, 83 Conn. App. 371–72. In this appeal, we consider whether the language of the Empire Estates deeds; see footnote 13 of this opinion; conveying the properties to the parties and their predecessors in title, ''subject to'' the original grantors' 1956 deed, which fits into the third category, nevertheless created a general development scheme, which fits into the second category. See *DaSilva* v. *Barone*, supra, 370–71 (noting that ''[a] subsidiary question to be resolved first is'' which common grantor's ''intent . . . is relevant'').

With respect to the second category, under which the plaintiffs claim standing, ''[r]estrictive covenants should be enforced when they are reflective of a common plan of development. . . . The factors that help to establish the existence of an intent by a grantor to develop a common plan are: (1) a common grantor sells or expresses an intent to put an entire tract on the market subject to the plan; (2) a map of the entire tract exists at the time of the sale of one of the parcels; (3) actual development according to the plan has occurred; and (4) substantial uniformity exists in the restrictions imposed in the deeds executed by the grantor. . . .

''The factors that help to negate the presence of a development scheme are: (1) the grantor retains unrestricted adjoining land; (2) there is no plot of the entire tract with notice on it of the restrictions; and (3) the common grantor did not impose similar restrictions on other lots. . . .

''Early Connecticut case law acknowledges the power of property holders with substantially uniform restric-

Abel *v.* Johnson

tive covenants obtained by deeds in a chain of title from a common grantor to enforce the restrictions against other owners with similar restrictive covenants. When, under a general development scheme, the owner of property divides it into building lots to be sold by deeds containing substantially uniform restrictions, any grantee may enforce the restrictions against any other grantee.'' (Citations omitted; internal quotation marks omitted.) Id., 372–73; see *Whitton* v. *Clark*, 112 Conn. 28, 36, 151 A. 305 (1930); *Stamford* v. *Vuono*, 108 Conn. 359, 364, 143 A. 245 (1928); *Contegni* v. *Payne*, supra, 18 Conn. App. 53; *Grady* v. *Schmitz*, 16 Conn. App. 292, 296, 547 A.2d 563, cert. denied, 209 Conn. 822, 551 A.2d 755 (1988); *Marion Road Assn.* v. *Harlow*, 1 Conn. App. 329, 333, 472 A.2d 785 (1984).

We begin with the language of the instruments at issue. The deeds at issue provide in relevant part: ''Said premises are conveyed *subject to* . . . restrictive covenants and agreements contained in a certain deed from Harry Waldron Havemeyer et al to Empire Estates . . . dated August 14, 1956 . . . [and] a declaration made by Harry E. Terhune and Gordon R. Paterson, as trustees, dated March 15, 1961 . . . .'' (Emphasis added.) The dictionary definition of the phrase ''subject to,'' standing by itself, is ambiguous because it defines the term as ''affected by or *possibly* affected by (something) . . . .'' (Emphasis added.) Merriam-Webster Online Dictionary, available at https://www.merriam-webster.com/diction ary/subject%20to (last visited August 18, 2021). The use of the term ''subject to'' has been described as language of ''qualification and not of contract,'' which renders it a provision of notice that will not by itself create an encumbrance in the absence of other circumstances. (Internal quotation marks omitted.) *Teal Trading & Development, LP* v. *Champee Springs Ranches Property Owners Assn.*, 432 S.W.3d 381, 390 (Tex. App. 2014), review denied, Texas Supreme Court, Docket

Abel *v.* Johnson

No. 04-12-00623-CV (August 22, 2014). When construing the term to determine whether it evinces an intent to create a common scheme of development, considerations include, for example, the recording of a plat, map or declarations, along with the presence of substantial uniformity as to the restrictions. See *Bon Aventure, LLC* v. *Craig Dyas, LLC*, 3 So. 3d 859, 864–65 (Ala. 2008); *Smith* v. *Second Church of Christ, Scientist, Phoenix*, 87 Ariz. 400, 407–408, 351 P.2d 1104 (1960); *Wahrendorff* v. *Moore*, 93 So. 2d 720, 721–22 (Fla. 1957); *Mayer* v. *BMR Properties, LLC*, 830 N.E.2d 971, 980–81 (Ind. App. 2005); *Patch* v. *Springfield School District*, 187 Vt. 21, 31–32, 989 A.2d 500 (2009); *Armstrong* v. *Stribling*, 192 W. Va. 280, 284, 452 S.E.2d 83 (1994); 23 Am. Jur. 2d 254, Deeds § 247 (2013); cf. *Teal Trading & Development, LP* v. *Champee Springs Ranches Property Owners Assn.*, supra, 392–93 ("subject to" language is "contextual," dependent on placement in deed and may affect warranty if placed in warranty clause, or create restriction, if used in granting clause).

The commentary to § 2.2 of the Restatement (Third) of Property, Servitudes,[14] provides a greater elucidation of how to interpret the term "subject to," as used in deeds. After observing that "[n]o particular verbal formula is required" and that "some formulas . . . may express the intent to create a servitude," the commentary explains in detail that the phrase "subject to" may "be used either to create a servitude or to disclose the fact that land conveyed is already burdened by a servitude. Since the term is ambiguous, courts must look to the surrounding circumstances to determine whether the parties used it with intent to create a servitude. If no previous servitude of the type described burdened the land, the inference

---

[14] Section 2.2 of the Restatement (Third) of Property, Servitudes, provides: "The intent to create a servitude may be express or implied. No particular form of expression is required." 1 Restatement (Third), Property, Servitudes § 2.2, p. 62 (2000).

Abel *v.* Johnson

is normally justified that the parties used the 'subject to' language to create a servitude. If the land conveyed was already burdened by such a servitude, the 'subject to' language is *often* included to qualify the grantor's covenant against encumbrances, rather than to create a new servitude. *However, the circumstance that the property was already burdened by a servitude of the type described is not determinative. Other circumstances, such as the fact that the language is used in conveyances that effectuate a new subdivision of the land, may justify the inference that the parties intended to create new servitudes for the benefit of the other lot owners in the subdivision.*" (Emphasis altered.) 1 Restatement (Third), Property, Servitudes § 2.2, comment (d), pp. 63–64 (2000).

Illustration (3) to the commentary is particularly instructive.[15] It posits: "Developer acquired a [forty acre] parcel 'subject to' a restriction to residential uses only. The parcel had been burdened with such a servitude restriction [ten] years earlier. In the absence of circumstances indicating a different intent, the conclusion is justified that the conveyance to [d]eveloper was not intended to create a new servitude. *Developer then subdivides the parcel into [forty] lots, according to a recorded plat map, and conveys each lot 'subject to' a restriction to residential uses only. The circumstances justify the conclusion that the conveyances of the subdivided lots*

_____

[15] By way of comparison, the first two illustrations are: (1) "O, the owner of Blackacre, a parcel of land burdened by an easement created [twenty] years earlier for ingress and egress in favor of Whiteacre, conveys Blackacre to A, 'subject to' an easement of ingress and egress in favor of Whiteacre. In the absence of circumstances indicating a different intent, the conclusion is justified that the conveyance to A was not intended to create a new easement." 1 Restatement (Third), supra, § 2.2, illustration (1), p. 64. And (2) "O, the owner of Blackacre, a lot in a subdivision restricted by the recorded plat map to residential uses only, conveys Blackacre to A, 'subject to' a restriction to residential uses only. In the absence of circumstances indicating a different intent, the conclusion is justified that the conveyance to A was not intended to create a new servitude." Id., § 2.2, illustration (2), p. 64.

*are intended to create new servitudes benefiting the other lot owners in the subdivision.*'' (Emphasis added.) Id., § 2.2, illustration (3), p. 64.

We also find persuasive sister state case law that, consistent with the Restatement (Third) of Property, indicates that a residential use restriction that is incorporated into a deed by ''subject to'' language is rendered enforceable by evidence of a common plan of development. Particularly instructive is the West Virginia Supreme Court's decision in *Armstrong* v. *Stribling*, supra, 192 W. Va. 280. In *Armstrong*, the court held that a property was bound by a restriction that prohibited ''the construction of more than one dwelling on any lot''; id., 282; when its deed provided that it was ''subject to'' certain previously recorded restrictive covenants. Id., 284. The court emphasized that a general plan of development existed because the deeds to the thirty homes in the development contained the reference to the restrictive covenants and were built in compliance with them. Id.; see *Wahrendorff* v. *Moore*, supra, 93 So. 2d 721–22 (conveyance ''subject to restrictions of record'' means that deed must be read together with plat of subdivision, rendering ''whatever properly appears on the plat . . . a part of the deed'' (internal quotation marks omitted)); *Mayer* v. *BMR Properties, LLC*, supra, 830 N.E.2d 980 (facts that developer established ''particular tracts . . . in a piecemeal fashion and did not prescribe to any common scheme or plan,'' failed to record ''a supplementary declaration subjecting the remaining tracts . . . to the restrictions and covenants,'' and ''never recorded a plat,'' as well as facts that ''no homeowner's association was ever formed, and [that] the various deeds do not reflect the conveyance of tracts within a subdivision or development that has been platted, organized or identified by a common plan or scheme,'' meant that '' 'subject to' '' language in deeds did ''not constitute an assurance that encumbrances either run with the land or that suc-

Abel *v.* Johnson

cessors or assigns are bound by them''); *Patch* v. *Spring-
field School District*, supra, 187 Vt. 31–32 (''subject to''
language will bind property by reference to other deed
if other evidence supports finding of general plan of
development, given equivocation of language stating that
''*conveyance was made subject to such conditions and
restrictions, if any there are which are legally binding*''
(emphasis in original; internal quotation marks omitted)).

These authorities, when viewed in the context of the
Empire Estates deeds and the 1961 declaration, article
35 of which expresses the intent to ''protect property
values,'' strongly support the plaintiffs' reading of the
''subject to'' language in the Empire Estates deeds as
establishing a general plan of development limited to
residential use. First, those deeds effectuated a new sub-
division of the land, which was contemporaneously writ-
ten on a map that was recorded in the Stamford land
records and referenced in the deeds. Second, article 8
of the contemporaneously executed 1961 declaration
strongly restricts the use and keeping of commercial
vehicles in a manner that is wholly inconsistent with
commercial use of the property. It provides: ''Any com-
mercial vehicle used by an occupant of a [t]ract shall be
kept within a garage with doors closed, except for brief
periods required for loading or unloading.'' The inclusion
of this clause supports a conclusion that Empire Estates
intended to eliminate commercial activity, while accom-
modating those property owners who might keep their
commercial vehicles at home for purposes of conve-
nience.[16] These restrictions, all of which were recorded

---

[16] The defendant argues, however, that article 8 of the declaration, which
requires that commercial vehicles kept on the property be garaged, contradicts
the plaintiffs' argument that Empire Estates intended to create a residential
use restriction because it would be unnecessary to include ''if commercial
activity was entirely impermissible in the first instance . . . .'' We disagree.
This clause supports a conclusion that Empire Estates intended to preclude
commercial activity because it indicates a desire to preserve aesthetics while
accommodating those property owners who might keep commercial vehicles
at home for purposes of convenience, along with avoiding the difficult question
of whether simply parking a commercial vehicle on a property is an activity

Abel *v.* Johnson

on the land records and available for any searcher to find, ineluctably lead to a conclusion that there was a common scheme of development limited to residential properties, as shown by a review of the twenty-four deeds and property cards admitted into evidence. Specifically, all of the deeds for Mill Stream Road, where the parties reside, were admitted into evidence and contain the "subject to" language at issue in this appeal. Other deeds for properties located elsewhere in the Saw Mill neighborhood contain a residential use restriction, albeit with two of the twenty-four lacking the specific "subject to" language at issue in this appeal and referencing a different declaration to establish that restriction.[17]

---

that is consistent with a residential use. Cf. *Roberts* v. *Lee*, 289 Ga. App. 714, 716, 658 S.E.2d 258 (2008) ("[The defendant] was using his residential property to advance his business interests by consistently parking a dump truck and other [commercial use] vehicles in his driveway. This finding was supported by photographic evidence demonstrating that [the defendant's] activities directly undermined the residential character of the property intended to be preserved by the [c]ovenants."); *Roberts* v. *Bridges*, Docket No. M2010-01356-COA-R3-CV, 2011 WL 1884614, *9 (Tenn. App. May 17, 2011) (parking of large tour bus and panel trucks on defendant homeowners' property "in the furtherance of [their] music business constituted use of the property for commercial purposes," given frequency and disruptive nature of activity); *Fowler* v. *Loucks*, Docket No. 32845-3-II, 2006 WL 1633708, *4 (Wn. App. June 14, 2006) (decision without published opinion, 133 Wn. App. 1020) (concluding that "parking a work vehicle at a residence does not violate the residential use restriction because it is merely incidental to the use as a residence" when record showed that "[t]he business use for the truck occurs at other locations").

[17] We note that the Appellate Court did not consider the factual underpinnings for the trial court's conclusion that a uniform plan of development was established by the facts of this case, choosing instead to distinguish those cases establishing the existence of such a plan by focusing on the language of the 1956 deed purportedly limiting the benefit of the residential use restriction to the original grantors. See *Abel* v. *Johnson*, supra, 194 Conn. App. 142–43 n.10. In her brief to this court, the defendant argues that "extension by implication is . . . not supported by the record," contending that "the record does not support the conclusion that [Empire Estates] subdivided all of its property and that newly created lots were subject to identical or substantially identical restrictions." The defendant notes language differences in some of the deeds that are part of the record, observing that they have "substantially different encumbrances than [those] of the plaintiffs' deed and the defendant's deed," particularly one, the Hollenberg deed, which does not refer to the 1956 deed restrictions or the declaration restrictions. We disagree with the defendant's assessment of the record. Although there are some

Abel *v.* Johnson

Moreover, although "subject to" requires us to consider the language of the original grantors' 1956 deed to which the Empire Estates deeds refer in order to determine its applicability, this inquiry brings us back to whether the Appellate Court correctly determined that the language of the restrictive covenant in the 1956 deed, which, "by its terms, inured to the benefit of the original grantors," namely, the Havemeyers "and their successors"; (emphasis omitted) *Abel* v. *Johnson*, supra, 194 Conn. App. 136; rendered it unenforceable by a party not a successor to the original grantors as a matter of law, given the apparent lack of evidence that the original grantors desired to create a general development scheme. See id., 141. Contrary to the reading of the Appel-

---

differences in the deeds, the Hollenberg deed refers to a different declaration of covenants recorded by Empire Estates' trustee, and, as admitted by Julie Hollenberg in her testimony at trial, her property is subject to the same residential use restriction as the other twenty-three properties considered by the trial court. Accordingly, as the trial court found, the record demonstrates the requisite "substantial uniformity" necessary to establish a common plan of development limited to residential use. *Contegni* v. *Payne*, supra, 18 Conn. App. 53; see *Whitton* v. *Clark*, supra, 112 Conn. 37 (twenty of fifty-four lots with restrictions does not show common plan); *DaSilva* v. *Barone*, supra, 83 Conn. App. 367–71 (plaintiff could not enforce restriction on keeping horses against defendant because no uniform plan of development prohibiting keeping of horses was established when twenty-two lot subdivision map "contains no mention of any restrictive covenants, and [the developer] did not record any separate agreement or declaration relating to restrictive covenants that would apply to the lots delineated on the map," restriction was not contained in any deed from original grantor to any subsequent developer, and developer included that restriction in only ten out of fifteen deeds); *Mannweiler* v. *LaFlamme*, 46 Conn. App. 525, 541, 700 A.2d 57 (restriction in developer's first thirty conveyances limiting lots to single private residence was sufficient "substantial uniformity" to create common scheme of development), cert. denied, 243 Conn. 934, 702 A.2d 641 (1997); *Contegni* v. *Payne*, supra, 60–61 (there was no uniform plan of development when map was ambiguous and "[a] thorough search of the record, transcripts and exhibits fails to reveal *a single characteristic* that was both unique to the lots within the claimed area of uniform development *and* applicable to all or substantially all the lots within the area" (emphasis in original)); *Marion Road Assn* v. *Harlow*, supra, 1 Conn. App. 333–34 (grantor did not intend to create general scheme of residential development when first lot conveyed lacked restrictions, and eighteen of forty-two lots were unrestricted, with other deeds having language "absolving her remaining lots from any such restrictions").

late Court, the addition of the phrase that it "*shall [i]nure to the benefit of the remaining land of the grantors lying westerly of the premises herein conveyed*" does not render the covenant unenforceable by the subsequent grantees of Empire Estates. (Emphasis added.) Although punctuation is not determinative in the construction of a legal instrument, the use of a comma to set off that clause grammatically indicates that the original grantors' land to the west remains a separate and independent beneficiary, which would afford the original grantee— Empire Estates, a developer—and its successors and assigns standing to enforce the residential use restriction. Nothing in that language suggests that the standing of the original grantors, or their successors, operates to the exclusion of the grantee and its successors and assigns, namely, property owners like the plaintiffs in this case.[18]

---

[18] As we have stated in the construction of other legal instruments, including statutes and contracts, punctuation, although not "immutable," is a "useful tool" for determining the intent of the instrument's drafter. (Internal quotation marks omitted.) *Indian Spring Land Co.* v. *Inland Wetlands & Watercourses Agency*, 322 Conn. 1, 14, 145 A.3d 851 (2016); see, e.g., *Connecticut Ins. Guaranty Assn.* v. *Drown*, 314 Conn. 161, 189–90, 101 A.3d 200 (2014) (applying principles to contract interpretation); *Stop & Shop Supermarket Co.* v. *Urstadt Biddle Properties, Inc.*, 433 Mass. 285, 289–90, 740 N.E.2d 1286 (2001) (punctuation, including placement of commas, is relevant in construction of deed, with phrase after comma serving as limitation). Thus, the "idea that we should entirely ignore punctuation would make English teachers cringe. . . . [S]tuffing punctuation to the bottom of the interpretive toolbox would run the risk of distorting the meaning of statutory language . . . and one component of written language is grammar, including punctuation." (Internal quotation marks omitted.) *Indian Spring Land Co.* v. *Inland Wetlands & Watercourses Agency*, supra, 15.

"Under the recognized precepts of English usage and grammar, a comma is usually employed to separate distinct items in a list. See generally W. Strunk & E. White, The Elements of Style (Pearson 4th Ed. 2000) pp. 2–3." *Indian Spring Land Co.* v. *Inland Wetlands Commission*, supra, 322 Conn. 15; see id., 15–16 (concluding that modifying phrase in General Statutes § 22a-40 (a) (1), "not directly related to farming operation," "applies with equal force to both 'road construction' and 'the erection of buildings' " because, "[h]ad the legislature intended all road construction, and not just that unrelated to agricultural activity, to be regulated, it could have included a comma after 'road construction,' thus setting road construction apart as its own separate category subject to regulation"); *Connecticut Ins. Guaranty Assn.* v. *Drown*,

Abel *v.* Johnson

See, e.g., *Indian Spring Land Co.* v. *Inland Wetlands & Watercourses Agency*, 322 Conn. 1, 14, 145 A.3d 851 (2016). Put differently, the three categories of restrictive covenants are "general" principles, and neither the defendant, the Appellate Court, nor our independent research has located any legal authority standing for the proposition that a particular restriction cannot be a grantor retained restriction enforceable by one party, and part of a common scheme of development enforceable as a matter of equity by another.

Indeed, such a principle would be drastically at odds with the equitable nature of the common plan of development theory. It is well settled that the "doctrine of the enforceability of uniform restrictive covenants is of equitable origin. The equity springs from the presumption that each purchaser has paid a premium for the property in reliance [on] the uniform development plan being carried out. [Although] that purchaser is bound by and observes the covenant, it would be inequitable to allow any other landowner, who is also subject to the same restriction, to violate it." *Contegni* v. *Payne*, supra, 18 Conn. App. 52; see *Whitton* v. *Clark*, supra, 112 Conn. 35.

Accordingly, we conclude that the plaintiffs had standing to enforce the restrictive covenant limiting the use of the properties to residential purposes only. The Appellate Court, therefore, improperly reversed the judgment of the trial court to the extent that it enforced the residential use restriction.

The judgment of the Appellate Court is reversed insofar as that court reversed the trial court's judgment enforcing the restrictive covenant that appears in the 1956 deed and the case is remanded to that court with

supra, 314 Conn. 190–92 (discussing application of last antecedent rule plus use of comma to limit application of vicarious liability exclusion in professional liability insurance policy).

Abel *v.* Johnson

the direction to affirm the judgment of the trial court enforcing that restrictive covenant; the judgment of the Appellate Court is affirmed in all other respects.

In this opinion the other justices concurred.

_____